TOWN OF GLASTENBURY *v.* THE ADMINISTRATOR OF THE ESTATE OF PROPERTY McDONALD.

[IN CHANCERY.]

*Fraud.    Chancery.    Jurisdiction.*

A court of equity will not interfere in cases of fraud where a court of law has first taken jurisdiction and will furnish a *full* and *complete* remedy.

A court of equity, however, in a proper case, has the right to intervene and order an instrument sought to be enforced in a court of law, which was procured by fraud, delivered up and cancelled.

The exercise of this power is to be regulated by sound discretion, as the circumstances of the individual case may dictate, and the resort to equity, to be sustained, must be expedient, either because the instrument is liable to abuse from its negotiable character, or from some other special circumstances peculiar to the case and rendering a resort to chancery proper and clear of all suspicion of any design to promote expense and litigation.

The town order, which the orator is seeking by his bill to have surrendered, being negotiable, although overdue, and the fact that the orator is a corporation, with the other circumstances, bring the case within the rule as above stated, and entitle the orator to relief.

The fact that the defendant raised the question of jurisdiction in his answer and not by demurrer to the bill, and allowed the testimony to be taken in full on both sides, and the case to be fully heard on its merits, before bringing the question of jurisdiction to the attention of the court, would favor the taking of jurisdiction by the court, rather than refusing it.

The question of increased litigation and expense, as a reason for not assuming jurisdiction, should have been raised *in limine* by demurring to the bill.

BILL IN CHANCERY. The bill set forth that on the 25th day of May, 1861, Property McDonald, of Glastenbury, in the county of Bennington, having no legal, equitable or moral claim or demand whatever against the orator, but fraudulently contriving and

intending to appropriate to himself the moneys and other property of the tax-payers of the orator, with the intent to cheat and defraud said tax-payers, and to compel them to pay him a sum of money to which he was not entitled, fraudulently conspired with one Jeremiah McDonald, the father of the said Property, and with one John W. McDonald, the brother of the said Property, and both of whom, at the annual meeting of the said inhabitants then next preceding, had been duly elected two of the selectmen of the orator, and were then acting as such selectmen, and the said Property fraudulently induced the said Jeremiah and John to sign, in their capacity of selectmen, in the fraudulent violation of their official duty to the orator, without the concurrence and against the remonstrance of Daniel G. Smith, then the only remaining selectman of the orator, an order upon the treasurer of the orator, thereby directing the said treasurer to pay to the said Property the sum of $500, and falsely and fraudulently purported to have been given for damages sustained on the highway in said town ; that said order was so given upon no legal, equitable or moral consideration whatever, but was concocted and given fraudulently and with the intent aforesaid, on the part of each and all of the above named Property, Jeremiah, and John, and by the latter two in the willful and fraudulent disregard of their duties as such selectmen. That further to fulfill and accomplish his said fraudulent purpose, the said Property McDonald afterwards, to wit : on the 2d day of May, 1862, commenced a suit against the orator, by writ returnable to the county court for said county, therein counting in assumpsit upon said order, demanding in damages the sum of eight hundred dollars ; which writ and suit were duly entered in said county court, and are now pending therein ; and the said Property now threatens to take a judgment therein against the orator for the amount of said order and interest thereon, with costs.

*Prayer :* That the said Property may be perpetually enjoined from taking judgment against the orator, in the said suit now depending in said county court, and from prosecuting the same suit against the orator ; that the said order so given as aforesaid may be declared to be utterly null and void, and of no effect ; that the

said order may be surrendered to the orator to be cancelled, and that the said Property may in the meantime be restrained from further prosecuting the said suit against the orator, and from taking judgment therein ; and for further relief.

The defendant in his answer denied all fraud on the part of the said Property McDonald and the selectmen aforesaid, and that Smith, selectman, opposed the giving of said order, and alleged that the order in question was given to settle a suit against the complainant town in favor of the said Property for an injury received by him by reason of the insufficiency of a certain highway in said town, and that said suit sought to be enjoined by the orator was brought to recover the amount due on a certain other order for $31.84, as well as the sum due on the order mentioned in the bill of complaint.

The answer was traversed, and the case was heard upon the pleadings and proof. The court, at the December term, 1870, WHEELER, Chancellor, decreed, *pro forma*, that the bill be dismissed, from which decree the orator appealed.

*A. B. Gardner* and *Geo. W. Harmon*, for the orator.

*T. Sibley*, for the defendant.

The opinion of the court was delivered by

Ross, J.   The orator asks that the order for $500, given by Jeremiah McDonald and John W. McDonald, as selectmen of the orator, and dated May 25, 1861, may be ordered to be surrendered and cancelled, as having been obtained and given through the fraud of Property McDonald, and of his father and brother, the selectmen who signed the order.   The order was given in settlement of a suit then pending against the town in favor of Property McDonald, to recover for injuries alleged to have been received by him through the insufficiency of a highway, which it was the duty of the town to maintain and keep in repair.   We have had no difficulty in finding, from the evidence, that the order was obtained and given in fraud of the rights of the orator ; and that in giving the order, Jeremiah McDonald and John W.

McDonald acted in accordance with a pre-arranged plan for that purpose, and not honestly in their capacity of selectmen. Notwithstanding this, the defendant insists that the court of chancery should not interfere, because Property McDonald had, before the commencement of this proceeding, brought a suit at law on the order, and another small order to which no defense is claimed ; and because the orator could avail itself of fraud as a defense to the order in the suit at law. In support of the claim that the court of law should be allowed to retain jurisdiction of this matter, the case, *Bank of Bellows Falls* v. *The Rutland & Burlington R. R. Co. et als.*, 28 Vt., 470, is much relied on by the defendant. The general doctrine as stated in that case is well established, that a court of equity will not interfere in cases of fraud where a court of law has first taken jurisdiction, and where the party asking the intervention of the court of chancery can have as full and complete remedy against the fraud in the court of law. The court, however, recognize the right of the court of chancery to intervene and order an instrument sought to be enforced in a court of law, which has been procured by fraud, delivered up and cancelled, in a proper case. The cases are not entirely harmonious in respect to the rule which should govern the court of chancery in such intervention. The rule laid down by Chancellor KENT in *Hamilton* v. *Cumings*, 1 Johns. Ch., 517, is perhaps the most complete rule on the subject, and is approved of by the learned judge who pronounced the opinion of the court in the case in 28 Vt. Chancellor KENT, after reviewing most of the leading cases on the subject up to that time, says : " Perhaps the cases may all be reconciled on the general principle, that the exercise of this power is to be regulated by sound discretion, as the circumstances of the individual case may dictate, and that the resort to equity, to be sustained, must be expedient, either because the instrument is liable to abuse from its negotiable character, or because the defense, not arising upon its face, may be difficult or uncertain at law, or from some other special circumstances peculiar to the case, and rendering a resort to chancery proper and clear of all suspicion of any design to promote expense and litigation."

Glastenbury v. Administrator of McDonald.

The defendant has raised the question of jurisdiction in his answer, and not by demurrer to the bill. He has thus allowed the testimony to be taken in full, on both sides, and the case to be fully heard on its merits, before the question of jurisdiction has been brought to the attention of the court. So far as the discretion of the court is to be influenced by the prolongation of litigation and increase of expense, the circumstances of the case would favor the taking of jurisdiction by court, rather than refusing it. If the court refuse to take ction, another trial of the question of fraud must be had, increased expense necessarily attending such a trial. If t ndant would have urged increased litigation and expense on urt as a motive for not assuming jurisdiction, he should have raised the question, *in limine*, by demurring to the bill.

The order is negotiable in the broadest sense, being payable to bearer, and is drawn upon the treasurer of the town, and regular upon its face. Although it is overdue, the orator would be embarrassed if it should be negotiated. The orator is a corporation, and can act only through its officers, and can have remedy against such officers only for malfeasance or misfeasance in the discharge of their duties. If the treasurer of the town — this court having dismissed the bill for want of jurisdiction, and without finding that the order was tainted with fraud — should assume to pay the order, the order, in a suit against the treasurer, would be burthened, not only with proving the order fraudulent, but also with showing that the treasurer acted corruptly in paying the same.

We think the circumstances bring the case within the rule as laid down by Chancellor KENT. If the evidence left the fact of fraud in doubt, the case might merit a different consideration. The *pro forma* decree dismissing the bill is reversed, and the case is remanded to the court of chancery, with a mandate to enter a decree for the orator, ordering the order of May 25, 1861, for $500, surrendered and cancelled. This order will not affect the suit at law, so far as it is based upon the other order. From the consideration that the suit at law for the alleged injury upon the highway was discontinued by the giving of the order for $500, we

have thought best to make the orator's right to the above order conditional upon the orator's consenting that the discontinuance may be stricken off, and that suit be brought forward on the docket for trial if the defendant desires it.