117 176
25a 349
117 176
37a 362
117 176
143 155
40a 329
117 176
45a 553
117 176
162 309
117 176
65a 303
117 176
71a 290
117 176
83a 390
117 176
90a ²190
117 176
192 ¹208
97a ¹467
f97a ⁴469
117 176
100a ¹289
100a ³291
100a ¹303
117 176
106a ¹360
109a ¹282
117 176
210 ¹158
117 176
113a ¹102

CARLOS GORE *et al.*

*v.*

EMANUEL KRAMER *et al.*

*Filed at Ottawa May 15, 1886.*

1. CHANCERY—*remedy at law—generally.* A party can have no standing in a court of equity who has a plain and adequate remedy or defence at law.

2. SAME — *creditor's bills — how far remedy at law must be pursued.* Before creditors can maintain a bill for the administration of the assets of an insolvent firm, they must acquire an equitable lien by exhausting their legal remedy, or in some other way. A creditor at large has no standing in a court of equity upon such a question.

3. SAME—*as to goods obtained upon credit by fraud—remedy at law.* The creditors of a failing firm filed their bill seeking to cancel their contracts for the sale of goods to the firm, on the ground of fraud, and then for a decree for the payment of the value of the goods,—not for a restoration of the goods, and not seeking to enjoin the fraudulent disposition of the goods until a judgment at law could be recovered, and failing to show any ground of equitable cognizance: *Held,* that the bill was properly dismissed for want of equity.

4. If goods are bought, and obtained upon long credit by means of false and fraudulent representations of the purchaser's financial condition and ability, with intent to defraud, the vendor may sue the vendees, in an action at law, for the value of the goods, and the contract so fraudulently obtained, can not be interposed to bar a recovery.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. HENRY M. SHEPARD, Judge, presiding.

This was a bill in equity, by appellants, against Emanuel Kramer, Nathan Kramer and Samuel Loebstein, composing the firm of Kramer Bros. & Co., in which it is alleged that said firm of Kramer Bros. & Co. was formed on or about November 1, 1882, for the purpose of conducting a wholesale hat business, and was to continue for three years; that they started with an alleged capital of $76,000, of which Nathan Kramer put in $18,000, Samuel Loebstein $25,000, and Emanuel

Kramer $33,000; that they transacted during the first year a profitable business, and in January, 1884, had increased their capital stock to $86,000; that having done a successful business, paid their bills promptly and established a large credit with the trade generally, they conceived and concocted the fraudulent scheme to use their said credit for the purpose of a gigantic swindling operation, and to that end they did, during the summer of 1884, buy of dealers in New York City and elsewhere, an amount of goods and merchandise largely in excess of the legitimate demands of their business, and amounting in the aggregate to upwards of $125,000; that they obtained said goods by false and fraudulent statements and misrepresentations, they stating that they had a net capital of $86,000, and were worth three dollars to every dollar that they owed; that by reason of such false and fraudulent statements and representations they obtained a long term of credit, and settled with their creditors by giving them their promissory notes, due in four, five and six months from date; that after fraudulently obtaining said goods, as a next step in their scheme they sent out their agents all through the Western States, and sold and disposed of a large portion of said goods on short time and at greatly reduced prices, and for figures below the purchase price of said goods; that they received therefrom a large amount of money, which they have kept and concealed, and intend to keep and conceal, from their creditors; that there are still a large number of accounts due and owing by various parties to said firm, and that many of said parties reside in other States, and are unknown to complainants, and that said firm keep the names of their said debtors, the amounts they owe, and where they reside, from the knowledge of their creditors, and are collecting, discounting and compromising said claims and converting them into money as rapidly as possible, for their own use and benefit, and with intent not to pay any of said money to their creditors; that said notes given by them to their various creditors are not yet

due, but that only time is needed to make said obligations absolute, but by reason of the fraud practiced upon them by said firm they have a right to have said contracts rescinded by delivering up said notes, and recover the value of their goods so converted; that as the next step in their scheme, and to prevent creditors from getting any part of the proceeds of their said goods, Emanuel and Nathan Kramer did on November 29, 1884, confess three pretended judgments, amounting in all to $29,077.50, and costs, of which $1600 was for attorney fees; that said judgments were confessed in favor of the First National Bank of Chicago, for $19,000, in favor of J. T. Baldwin, cashier of Manhattan Company Bank, for $8500, and in favor of Charles Glanz, for $1577.50, on notes dated November 28, 1884, but which complainants charge were made November 29, 1884, and ante-dated; that said suits were commenced and judgments entered against Emanuel and Nathan Kramer alone, when in truth and in fact Samuel Loebstein was at that time a member of said firm; that executions immediately issued upon said pretended judgments against the property of Emanuel and Nathan Kramer, and were on the evening of said 29th day of November, 1884, levied by the sheriff upon the stock of goods and merchandise, safe, office furniture, etc., of said firm of Kramer Bros. & Co., of which firm Samuel Loebstein was then a member, and that the sheriff had advertised to sell the same December 11, 1884, at eleven o'clock A. M., to satisfy said executions; that said judgments were entered in the afternoon of the last day of the November term of the Superior Court, and execution given to the sheriff after court adjourned for the term; that the said banks have collateral security for their debts, to which complainants can not resort; that there is in the hands of the sheriff $40,000 to $50,000 worth of property of said firm, which in equity should be applied to the payment of the partnership debts; that if the sheriff is allowed to sell the same under the said executions, the partnership property will be ex-

hausted to satisfy the pretended individual debts of Emanuel and Nathan Kramer; that on December 1, 1884, Samuel Loebstein pretended to sell his store in Beecher, Illinois, to one S. Myer, and also pretended to assign three mortgages owned by him and give a trust deed on another piece of real estate, thus attempting to place all his individual property beyond the reach of creditors; that defendant firm has no other property save said property levied upon by the sheriff, and complainants know of none owned by the members except the above mentioned property of Loebstein; that by reason of said fraudulent transactions complainants are in imminent danger of losing their demands, unless the sheriff be enjoined from proceeding with said sale, and said property be turned over to a receiver to protect the same for the benefit of the creditors of said firm; that if the sheriff is allowed to sell said stock, the same will be sacrificed, and sold at a great loss; that the debts of said firm largely exceed their assets; that complainants would not have sold said goods to said firm but for their false and fraudulent representations, which at the time complainants believed; that said defendants knew them to be false, and made them for the purpose of defrauding, and never intended to pay for said goods; that complainants had no knowledge of the fraud practiced upon them until the said pretended judgments were entered, executions issued, and the sheriff had made his levy, and that they file this bill on behalf of themselves and all other creditors of said firm; bill prays for an injunction, and receiver to take charge of all assets of said firm, and collect its debts for the benefit of the creditors of said firm; that the contracts made between said firm and complainants be declared void for fraud, and complainants be allowed to recover the value of their goods; that an accounting be had between said firm and all its creditors, and that the partnership property be first subjected to the payment of the partnership debts; that said judgments against Emanuel and Nathan Kramer be postponed until after the partnership debts

are paid, and that the conveyances made by Samuel Loebstein may be declared fraudulent and void as to creditors, and be set aside, etc. A preliminary injunction was granted, which, upon a hearing, the court, on motion, dissolved.

The defendants demurred to the bill for want of equity. The court sustained the demurrer, and the complainants electing to stand by their bill, the court decreed that it be dismissed. From that decree the complainants appealed to the Appellate Court for the First District, and that court affirmed the decree of the Superior Court. The case is here by the appeal of the complainants from this affirmance.

Messrs. WEIGLEY, BULKLEY & GRAY, for the appellants:

The bill is sustainable on two grounds,—fraud, and as a bill to administer the assets of an insolvent partnership.

In all cases of fraud not penal, a court of equity has a concurrent jurisdiction with courts of law, with the single exception as to fraud in obtaining a will. Kerr on Fraud, 44; 1 Story's Eq. Jur. sec. 440.

If necessary, the court will declare the perpetrators of the fraud trustees for the benefit of the defrauded, and compel them to account as such. 2 Story's Eq. Jur. sec. 1265; 1 Perry on Trusts, 187; Bigelow on Fraud, 323.

The following are some of the cases which hold that equity has concurrent jurisdiction. *Cott* v. *Wallaston*, 2 P. Wms. 156; *Stent* v. *Bailis*, id. 220; *Sowerby* v. *Warder*, 2 Cox, 268; *Chesterfield* v. *Jamesen*, 2 Ves. Sr. 155; *Cockrell* v. *Warner*, 14 Ark. 545; *Smith* v. *Griswold*, 6 Ore. 440; *Durrell* v. *Haley*, 1 Paige, 492; *Bradbury* v. *Keas*, 5 J. J. Marsh. 446; *Waters* v. *Mattingly*, 1 Bibb, 244; *White* v. *Clark*, 3 T. B. Mon. 391; *Cheney* v. *Gleason*, 117 Mass. 557; *Coke* v. *Harrison*, 6 Munf. 184; *Ramsden* v. *O'Keefe*, 9 Minn. 74; *Jones* v. *Bolles*, 9 Wall. 364; *Cohen* v. *Myers*, 42 Ga. 46; *Wachtel* v. *Wild*, 58 id. 50; *Whitney* v. *Roberts*, 22 Ill. 383; *Jones* v. *Neeley*, 72 id. 449; *Nelson* v. *Rockwell*, 14 id. 375; *Truitt* v. *Wainwright*, 4 Gilm.

418; *Henshaw* v. *Bryant,* 4 Scam. 97; *Haggarty* v. *Pittman,* 1 Paige, 298; *Rosenberg* v. *Moore,* 11 Md. 376.

Whenever a person has obtained the property of another by fraud, he is a trustee *ex maleficio* for the person so defrauded. He is not a trustee for the title, for that he never acquired, but of the thing which he has in his possession. *Christy* v. *Sill,* 95 Pa. St. 380; *Smith* v. *Wright,* 49 Ill. 403.

. If this view be correct, it confirms our position that no judgment is required before filing the bill in equity based on fraud, as equity has jurisdiction in cases of trust, although there be a complete remedy at law. *Miller* v. *Davidson,* 3 Gilm. 522; *Marlow* v. *Marlow,* 77 Ill. 633.

The bill may be sustained as a bill for the administration of the assets of an insolvent firm. The creditors of a partnership have an equitable right to payment out of the partnership effects in preference to creditors of the individual partners. *Deveau* v. *Fowler,* 2 Paige, 400; *Rainey* v. *Nance,* 54 Ill. 29; *Newhall* v. *Buckingham,* 14 id. 405.

This is a right that can be enforced only in a court of equity. The levy of the executions against Emanuel and Nathan Kramer dissolved the partnership of Kramer Bros. & Co. Story on Partnership, secs. 311, 360.

That the bill lies as one for the administration of the assets of an insolvent partnership, see 2 Barbour on Chancery, 149; Wait on Fraud. Con. note to sec. 68; *Jackson* v. *Sheldon,* 9 Abb. Pr. 127; *Innes* v. *Lansing,* 7 Paige, 583; *Levy* v. *Ely,* 15 How. Pr. 395; *Dillon* v. *Horn,* 5 id. 35.

Mr. W. B. CUNNINGHAM, for the appellees the Kramer Bros. & Co.:

The bill fails to show that complainants are creditors of Kramer Bros. & Co., or the insolvency of that firm, or that any of the confessed judgments are not *bona fide.*

The right to have partnership property first applied to pay partnership debts, is one personal to the partners. *Ladd* v.

*Griswold,* 4 Gilm. 46 ; *Hapgood* v. *Cornwell,* 48 Ill. 65 ; *Rainey* v. *Nance,* 54 id. 29 ; *Goembel* v. *Arnett,* 100 id. 34 ; *Williamson* v. *Adams,* 16 Bradw. 569.

Messrs. Peckham & Brown, for the appellee the First National Bank.

Messrs. Moses, Newman & Reed, for the appellee the cashier of the Manhattan Bank.

Mr. Justice Scholfield delivered the opinion of the Court:

This is not, as was *Henshaw* v. *Bryant,* 4 Scam. 97, cited by counsel for appellants, a bill to rescind a contract of sale and restore the property obtained under it. Under the facts alleged here, the property could not be restored, and the primary object of the bill is simply to recover a debt, first cancelling the contract of sale for fraud, and then obtaining a decree for the payment of the value of the goods. It is not contended that this could not be done at law, and it is clear that if the contract of sale was fraudulent, an action at law would lie for the value of the goods, and the fraudulent contract could not be interposed to bar a recovery. Nor is it sought to restrain the disposition of property until there can be a trial at law. Not a single ground for purely equitable, as distinguishable from legal, cognizance, is perceived. The effect of maintaining the bill would be to deprive the defendants of a jury trial on a question where, by the rules of the common law, they are entitled to such trial. The rule has been often repeated in this court, that a party can have no standing in a court of equity who has a plain and adequate remedy or defence at law. *Puterbaugh* v. *Elliott,* 22 Ill. 157 ; *Coughron* v. *Swift,* 18 id. 414 ; *City of Peoria* v. *Kidder,* 26 id. 351 ; *Bigelow* v. *Andress,* 31 id. 322 ; *Long* v. *Barker,* 85 id. 431.

Nor is there anything in the situation of the assets of Kramer Bros. justifying a resort to equity before a judgment

at law is obtained. This is conclusively settled by *Shufeldt* v. *Boehm,* 96 Ill. 560, and *Dormueil et al.* v. *Ward et al.* 108 id. 216, and cases therein recited. In the last named case, as in this, no judgment at law had been obtained. Numérous fraudulent acts were charged in the bill, and we said : "If a bill of this kind can be maintained at all on the ground that the debtor has been guilty of fraud, and is seeking to defeat the collection of an honest debt by covering up his property, or placing it beyond the reach of his creditors with a fraudulent intent, enough is clearly shown to maintain this bill. * * * But it is clear, unless we are prepared to overrule a long line of decisions extending back almost to the time of the organization of this court, a bill of this character can not be maintained upon the ground suggested, and this, of course, we can not consistently do, in face of the fact the rule adopted by this court is supported by the decided weight of authority. As was said in a recent case, this is no longer an open question." It was contended that the facts brought that case within the recognized exceptions to the general rule, and in reply to that it was said : "These so-called exceptions, when properly understood, are rather nominal than real, for a bill of this character will not lie in any case where the claim, as it is here, is purely legal. In all cases where such a bill has been maintained, the claim of the complainant has had some equitable element in it,—such as a trust, or the like. But in the absence of some element of this character there is a want of jurisdiction to adjudicate upon the case at all, and it is upon this fundamental doctrine the rule controlling this class of cases rests."

But counsel contend this bill may be maintained as a bill for the administration of the assets of an insolvent firm. But to enable the complainants to maintain a bill of this character, they must, in the first place, acquire an equitable lien by exhausting their legal remedy, or in some other way. A creditor at large has no standing in court upon such a ques-

tion. (*Crippen* v. *Hudson*, 13 N. Y. 161.) And in *Goembel* v. *Arnett et al.* 100 Ill. 42, we held that a creditor of a firm, who had not obtained a judgment at law, could not maintain a bill in equity to set aside a sale on the ground of a fraudulent preference.

We find no cause for disturbing the judgment of the Appellate Court. It is therefore affirmed.

*Judgment affirmed.*