Edward S. Richards and John W. Maynard

v.

Lake Shore & Michigan Southern Railway Company.

*Jurisdiction—Equity—Waiver of Objection—Power of Court to Interpose Objection—Breach of Contract—Damages.*

1. A court of chancery can not be compelled, by stipulation of the parties waiving objection to the jurisdiction, to entertain a bill where the proper remedy is at law, and where the case is wholly foreign to its own jurisdiction.

2. Where the parties interpose no objection to the jurisdiction, it is within the power of the court at any time to interpose the objection for its own protection.

3. The subject-matter of a bill filed purely and solely for the recovery of damages for breaches of a contract, is wholly foreign to the jurisdiction of a court of chancery.

[Opinion filed February 8, 1887.]

Appeal from the Superior Court of Cook County; the Hon. Gwynn Garnett, Judge, presiding.

The appeal in this case is from a decree of the court below sustaining a demurrer to a bill in chancery, and dismissing the bill at complainants' costs for want of equity. The bill alleges that on the 2d day of January, 1884, Edward S. Richards, one of the complainants, entered into an agreement in writing with the Lake Shore & Michigan Southern Railway Company, the expressed object of which was to procure a cheaper method of transferring grain, mill feed and seeds from one car to another than was then employed by said company, and for that purpose to use a device of said Richards, secured to him by letters-patent from the United States. Said agreement recited that said Richards intended to erect a grain transfer house on certain property in the agreement described, for the purpose of so handling, weighing and transferring in bulk

such grain, mill-feed and seeds as might be delivered to him for that purpose by said company, and it was thereupon agreed that said company, for a certain consideration, granted and leased to said Richards, for the term of ten years, certain grounds on which to erect said transfer house, and, as soon as said house should be constructed, to build and maintain on said grounds, and through said house, the tracks, etc., necessary for the transaction of the business contemplated by the agreement, and do all switching of loaded and empty cars to and from said transfer house at its own expense; and in case there should be any saving to it in the switching, weighing and transfer of its products through the methods and devices of said Richards over and above the actual cost of doing the same work by the ways and methods then in use by said company, to pay the amount thereof to be ascertained in accordance with certain rules specifically laid down in said agreement to said Richards, such payments to be made on or before the middle of each month for the month preceding.

Said Richards agreed on his part to build said transfer house in accordance with his said patented device, and to maintain the same for said period of ten years, and furnish said building with scales and other devices necessary for properly weighing and transferring said commodities, at his own cost, and to receive, weigh and transfer the same with promptness and dispatch, at his own costs and expense. And it was mutually agreed that said Richards should have charge of the operation of the transfer house, and of the employes connected therewith, and have for his own use all the emoluments and profits of the business; that all shipments originating at points west of Chicago, and properly billed through to eastern points and requiring transfer through said house should be classed as " through shipments," and transferred in the same manner as re-consigned property, it being agreed that said company should, under no circumstances, be charged weights upon any transfers made through said house, but the right was reserved to said Richards to charge such fees as might be agreed upon between him and the owners of the property for weights and transfer, and for such other services as he might render in con-

nection therewith. It was further agreed that said Richards should receive his compensation for his time, labor and investment, except as to the saving in the cost of transferring said commodities above specified, from the weighing of property passing through said house, and from the owners of said property and not from said company, and that said company should not make use of the weights obtained from said Richards in the conduct of its business for any other purpose than billing the property to its destination, but upon request of said Richards, should collect the weighing charges in the same manner as other advanced charges are collected, and pay the same to him monthly.

It was further agreed that if said transfer house should furnish inadequate facilities, said Richards should erect additional buildings on grounds to be furnished by said company for that purpose; that in case of differences between said parties as to the meaning or execution of said contract the matter should be submitted to arbitration; that at the expiration of the agreement it should be optional with said company to retain said buildings with all the devices, equipments and instrumentalities then in use, paying to said Richards their value to be ascertained by appraisement; that if said company neglected for twenty days to exercise its option, said Richards should have ninety days thereafter to remove said buildings and equipments and surrender to said company said grounds; that during the term said company should pay all taxes and assessments on the grounds and said Richards on the buildings and equipments; that said company should render to said Richards monthly accounts of the business done under said agreement.

The bill alleges that on the 23d day of January, 1884, said Richards assigned all his interest in said agreement to the firm of Richards, Maynard & Company, composed of said Richards and John W. Maynard, the other complainant; that immediately thereafter the complainants commenced the erection of said transfer house, and completed the same, with the equipments, on or about June 24, 1884, and that they thereupon entered upon the business of transferring and weighing

the commodities specified in said agreement; that they could not conveniently transfer mill-feed, and that they therefore waived their right to be given the business of transferring that commodity; that by the terms of the agreement it was the duty of said company to deliver to the complainants for the purpose of being transferred and weighed, all the grain and seeds to be transferred by said company from cars of western and other connecting railroads to cars used by said company in transporting such grain and seeds over its railway to eastern points, from the date last mentioned to the end of said term of ten years; that it was its duty not to make use of the weights obtained from the complainants for any other purpose than billing said commodities to their destination at eastern points; that it was the duty of said company to assist the complainants in every reasonable way in collecting their charges for the weighing of grain and seeds of the owners thereof and to do nothing to prevent the complainants from charging and collecting such fees; and that it was the duty of said company to submit any matter of difference arising between it and the complainants, in the course of said business, to arbitration.

The bill alleges breaches of said agreement in refusing to deliver to the complainants, in their transfer house, for the purpose of being transferred and weighed, all the grain and seeds which were transferred from the cars of western and connecting railroads to cars used by said company in transporting the same over its railway to eastern points, and states specific instances in which said company had been guilty of such breaches of its agreement; also in obtaining weights from the complainants in the course of its business for other purposes than billing the property to its destination, and giving and selling such weights to western railroads connecting with said company's railway, the number of car loads of grain and seeds of which the weights had been thus obtained and improperly used by said company being particularly specified; also in failing to assist the complainants in every reasonable way in collecting their fees and charges for weighing a large number of carloads of grain and seeds and in hindering and preventing

the complainants from charging and collecting their fees upon a large number of other car loads of grain and seeds; also in refusing to submit the differences arising between said company and the complainants out of said business to arbitration; that in consequence of said breaches of said agreement, the complainants have been deprived of large' and divers profits, amounting to the sum of, to wit, $250,000. The bill prays that a decree may be entered to establish the damages suffered by the complainants in consequence of said breaches of said agreement by said company, and that they may have a judgment therefor, and also a general prayer for relief.

To said bill said company filed a demurrer for want of equity, but afterward said company came by its solicitor and filed a stipulation, as follows:

"The defendant waives the objection to the jurisdiction of a court of equity in said cause which might arise on the possible ground of there being a remedy at law, hereby intending no, to waive any other defense, objection or exception whatever.'

The court, notwithstanding said stipulation, sustained the demurrer and dismissed the bill for want of equity.

Messrs. GARDNER, McFADON & GARDNER and SMITH & PENCE, for appellant.

Mr. PLINY B. SMITH, for appellee.

BAILEY, J. The bill in this case is filed purely and solely for the recovery of damages for breaches of a contract. No other relief is asked and no ground for any other relief is alleged, the subject-matter of the bill thus being wholly foreign to the jurisdiction of a court of chancery. The case, therefor, is purely one of legal as distinguished from equitable cognizance. To such a bill the court below has sustained a demurrer for want of equity, notwithstanding the stipulation of the defendant waiving the objection to the jurisdiction of the court on the ground that there is a remedy at law. The question thus raised is, whether a court of chancery can be compelled, by the stipulation of the parties, to entertain bills in matters where the proper remedy is at law, and where the case is wholly foreign to its own jurisdiction.

The rule has been so often repeated as to have become a recognized legal maxim, that a party can have no standing in a court of equity who has a plain and adequate remedy at law. Gore v. Kramer, 117 Ill. 176; Werden v. Graham, 107 Ill. 169; Long v. Barker, 85 Ill. 431; Coughran v. Swift, 18 Ill. 414; Puterbaugh v. Elliott, 22 Ill. 157; City of Peoria v. Kidder, 26 Ill. 351; Bigelow v. Andress, 31 Ill. 322.    There are cases, it is true, where it is held that, if a defendant in chancery answers without objecting that the defendant has a remedy at law and consents to a hearing on the merits, and thus submits himself to the jurisdiction of the court, it is too late for him afterward to object that the court has no jurisdiction because of the existence of an adequate legal remedy. Dodge v. Wright, 48 Ill. 382; Ohling v. Luitjens, 32 Ill. 23. But this rule applies only where the subject-matter of the bill is not wholly foreign to the jurisdiction of a court of equity.    Stout v. Cook, 41 Ill. 447; Comstock v. Henneberry, 66 Ill. 212; Magee v. Magee, 51 Ill. 500; Hickey v. Foristal, 49 Ill. 255.

In Kimball v. Walker, 30 Ill. 482, the court, after stating the general rule that, if the objection is not taken advantage of by plea or demurrer in the first instance, it can not be urged on appeal or error, say: " This is, no doubt, the rule as to the parties, but we hold it is in the power of the court at any time, to interpose the objection for its own protection, and thus prevent drawing into the vortex of a court of chancery matters purely cognizable at law and that by the management and consent of the parties interested. If such power did not exist, the lines dividing the jurisdiction of court of law and of chancery would be speedily obliterated." The foregoing language is quoted with approval in Stout v. Cook, supra, with this explanation added: " What was meant by this remark was, that if the subject-matter were of such character as to be wholly foreign to the jurisdiction of a court of chancery, as for example, a claim for damages for slander, or for an assault and battery, the court might properly dismiss the cause at any stage of the proceedings."

It is not necessary for us to determine in this case whether

the court, if it had seen fit to do so, might not have retained jurisdiction and rendered a valid decree in favor of the complainants for their damages. All that we need to decide is, that it was not *obliged* to entertain jurisdiction for that purpose. The parties could not, by their stipulation, break down the proper barriers which the law has interposed between the powers and functions of courts of equity and courts of law, and *compel* a court of equity, against its will, to assume and exercise the powers and functions of a court of law. Even if no pleading had been filed challenging the sufficiency of the bill, the court might at any time, on ascertaining by inspection of the pleading that the case presented was purely one of legal cognizance, have dismissed the bill *sua sponte*. But the defendant having demurred for want of equity, we know of no principle upon which the decision of the court sustaining the demurrer can be held to be erroneous.

The decree will be affirmed.

*Decree affirmed.*