## Mary E. Shenehon v. Illinois Life Insurance Co.

1. JURISDICTION—*Of Courts, Defined and Explained.*—In the full sense of the word, jurisdiction is the power of a court to hear and determine matters before it. Over the subject-matter it exists by virtue of law; over the parties. it is acquired in the manner provided by law, in each particular case.

2. COURTS OF EQUITY—*Usages and Practices—Jurisdiction.*—The general usages and practice of courts of equity is not to take jurisdiction where the complainant has a full, plain and adequate remedy at law.

3. SAME—*Concurrent Jurisdiction When the Legal Remedy Is Not Adequate.*—In cases of concurrent jurisdiction of courts of law and of equity, the fact that the legal remedy is not full, adequate and complete is the real foundation of concurrent jurisdiction.

4. SAME—*Will Not Interfere Where the Primary Right is Legal.*— In cases where the primary right, interest or estate to be litigated is a legal one, and a court of law can do as complete justice to it, both with respect to the relief granted and to the modes of procedure by which such relief is conferred, as a court of equity, equity will not interfere even with those peculiar remedies which are administered by it alone, such as injunctions, cancellation of contracts, and the like, much less with those remedies which are administered both by it and by the law, and which belong to its concurrent jurisdiction.

5. SAME—*What Constitutes the Foundation of Concurrent Jurisdiction.*—The inadequacy of the legal remedy to meet the requirements of justice where the primary rights, interests, or estates of the litigating parties are wholly legal, constitute the foundation of the concurrent jurisdiction of equity to interfere and are the essential facts upon which the existence of such jurisdiction depends.

6. SAME—*Cancellation of Contracts of Insurance for Fraudulent Representations.*—A court of equity will not take jurisdiction of a suit to cancel a policy of insurance on the ground of false and fraudulent representations of matters material, on the part of the insured, in making his application, where the insurer has an adequate and complete remedy at law.

**Bill to Cancel a Policy of Life Insurance.**—Appeal from the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1901. Reversed. Opinion filed February 21, 1902.

The amended bill in this case sets forth, among other things, that on the 21st day of December, 1900, one George E. Shenehon made application in writing to the home of complainant in Chicago for insurance on his life for the sum of $5,000; that in consideration thereof complainant, on the 26th day of December, 1900, executed two policies, numbered 19005 and 19006, for $2,500 each, upon the life of said George E. Shenehon, which policies agreed, in consideration of the payment of $82.93 on each of them in advance, and a like sum annually thereafter, that complainant would pay the sum of $2,500 on each of said policies to Mary E. Shen-

ehon, upon receipt and approval of the fact and cause of death of the insured, subject to certain terms and conditions in the policies and in the application therefor; that the policies should not take effect until the payment of the first premium in cash, during the lifetime and good health of the insured; that after the said execution of said policies of insurance they were sent to Milton G. Lamb, the city agent of complainant, and were tendered by him to said George E. Shenehon on or about the 26th day of December, 1900, who refused to accept the same or to pay the premiums on them, or either of them; that between said date and the 22d of January, 1901, they were at divers times tendered to said Shenehon, who each time refused to accept them, or either of them, and pay the premium on them.

That on or about January 22, 1901, said George E. Shenehon became ill; that on the following day, or soon thereafter, his illness was diagnosed by his attending physician as pneumonia; that thereafter respondent, being the beneficiary named in the said policies of insurance, and well knowing the serious physical condition of her husband, the insured, and being advised of the fact that his illness would probably prove fatal, and with the deliberate intent and purpose to defraud and deceive complainant, went to the office of said Lamb and procured the delivery to her of said policies of insurance on January 29, 1901, at about the hour of 1:30 o'clock P. M., with a full knowledge of the dangerous illness of said George E. Shenehon and of the stipulations in the policies and in the application that the policies should take effect only upon the payment of the first premium in cash during the lifetime and good health of the insured, and with full knowledge that the complainant, if it knew the fact of the then critical condition of said George E. Shenehon, would not deliver to her said policies or accept the premiums therefor, and with the fraudulent intent of having the policies becoming immediately effectual for her benefit in the event of the fatal termination of the illness of said George E. Shenehon.

That complainant had no knowledge of the illness of said

George E. Shenehon until the 29th day of January, 1901, after she had procured the policies; that as soon as it learned of his illness it immediately tendered and offered to pay back to said George E. Shenehon and the respondent, who had possession of said policies, the premiums paid therefor, and then and there made demand upon them for the return of the policies, which demand was refused; that the illness of said Shenehon was not made known to complainant, but was purposely and willfully concealed from it; that if it had known of the condition of said Shenehon it would not have permitted said policies to be delivered to respondent, and would not have accepted the premiums thereon, and would not have authorized the delivery of said policies under the then existing conditions when she obtained possession thereof. That a deliberate fraud was practiced upon complainant in obtaining the delivery of the policies to said Mary E. Shenehon and in the payment of the first premiums thereon, as aforesaid, and that no obligations arose or existed on the part of complainant to her under said policies, or either of them.

That on the 31st of January, 1901, as a result of said illness, said George E. Shenehon died; that said Mary E. Shenehon has demanded payment to her of the face amount of said policies, $5,000, so fraudulently procured by her, which payment has been refused by complainant; that prior to the filing of the bill of complaint, the amount of the premiums paid by her, together with lawful interest thereon, was offered and tendered to respondent, but was by her refused. Complainant offers to pay the same, $165.86, with interest thereon, to her; that an action at law is now threatened by her upon said policies.

Complainant avers that neither of said policies was a valid or existing contract or obligation against complainant, and that the possession thereof by respondent, and her claims set up thereunder, constitute a wrong and injury to complainant, for which it has no plain, adequate and common remedy at law, and particularly in this court; that it is entitled to have said policies canceled and surrendered to

complainant; that this court should take jurisdiction of the matter and restrain and enjoin respondent from bringing any action at law upon either of said policies, and should decree that they be canceled and surrendered to complainant.

That at the time said George E. Shenehon made application for said life insurance, he stated in answer to questions therein put to him, that he was then in good health; that he had not then any disorder or disease, and that as to his personal habits regarding the use of wines, spirits or malt liquors, he stated that he used them to the extent of "None for last five months—never over a drink a day;" that he never had used either or any of them to excess, and that he never had taken any treatment for the drug or liquor habit; that in reply to the question as to whether he had any of the thirty-nine diseases or conditions mentioned in said application, including pneumonia, he answered as to each in the negative; that on or about December 22, 1900, said application was accepted by complainant's medical director; that complainant relied upon the truth of the statements, promises and answers therein contained, and issued said policies, based thereon; that complainant is informed and believes, and therefore states the fact to be, that at the time of making said application, said George E. Shenehon was in bad health and suffering from disease; that at said time he was and had been for many years prior thereto in the habit of using wines, spirits and malt liquors to a greater extent than stated by him in said application, and had used them or some of them to the extent of intoxication frequently during the ten years immediately preceding the date of his application, during all of which time he was a hard drinker, and in the habit of going on periodical sprees, and that he had, at least once prior to said application, on the 14th of February, 1898, taken treatment for the liquor habit at the Plainfield Keeley Institute, at Plainfield, Indiana, where he remained twenty-eight days as a patient, under treatment for the liquor habit; that said policies were issued through and by reason of fraud, covin and deceit, and by false and fraudulent

statements, representations and answers in said application as hereinbefore set out, and that said policies were void *ab initio*, and never took effect as binding and subsisting contracts.

That on the 31st of January, 1901, said George E. Shenehon died; that complainant had no knowledge that the statements, representations and answers in said application were false and fraudulent; that the fact they were false and fraudulent was purposely concealed from it; that had it known they were false and fraudulent it would not have delivered the policies.

That complainant is informed and believes that at present there are within reach of legal process a sufficient number of competent and reputable witnesses to fully prove the covin, fraud and deceit complained of, but that it fears that these witnesses, by death or other cause, may become unavailable for the purpose of resisting suit upon said policies of insurance at the suit of said Mary E. Shenehon, claiming thereunder as hereinbefore stated.

Prays that said Mary E. Shenehon, widow of said George E. Shenehon, deceased, respondent, may show cause why complainant should not have the relief prayed; that she may be required to make disclosure and discovery of all the matters aforesaid, according to her best knowledge, information and belief, but not under oath; that said policies of insurance may be declared null and void and canceled; that she may be required to produce the same to be canceled; that said respondent may be enjoined and restrained from bringing or prosecuting any action at law or other proceeding against your orator upon said policies, or either of them.

The affidavit of Oswald J. Arnold to the amended bill is as follows:

" Oswald J. Arnold, being duly sworn, deposes and says that he is the secretary of the Illinois Life Insurance Company, the complainant in the foregoing complaint, and as such is authorized to make this affidavit in its behalf; that he has read the above and foregoing amended bill, and knows the contents thereof, and that the same is true of his own personal knowledge."

An order was entered October 4, 1901, allowing complainant to file amended bill instanter and granting an injunction, as follows:

"And it is further ordered that a writ of injunction issue in the above entitled cause according to the prayer of said amended bill, upon the complainant filing with the clerk of this court a satisfactory bond in the sum of five thousand dollars ($5,000)."

Prior to this, upon the original bill, an injunction had been issued which was afterward modified, as follows:

"And whereas, said court has allowed an injunction for that purpose, according to the prayer of said bill, except that said Mary E. Shenehon is permitted to bring suit upon said policies by filing a præcipe therefor."

Under this modification suit was begun in the Circuit Court of Cook County by appellee on each of the policies.

MOSES, ROSENTHAL & KENNEDY, attorneys for appellant.

THEODORE K. LONG and HARRY WHEELER STONE, attorneys for appellee.

MR. JUSTICE WATERMAN delivered the opinion of the court.

In the full sense of the word, jurisdiction is power to hear and determine. Jurisdiction over a subject-matter exists by virtue of law; jurisdiction over parties is acquired in each particular action.

In England, up to the recent judicature act which went into operation November 2, 1875, the jurisdiction of courts was principally consuetudinary: an evolution out of the conditions under which civilization was there developed.

As in ancient days the king was the fountain of all authority, so he was the source of all justice. There was then the king's court, attached to his person, which attended him in his journeys throughout the realm.

The limited power of the common-law courts, the insufficiency of the forms of action then in use, debt, covenant, trespass and detinue; the rigidity of the judges in adhering to the rules and precedents established by custom and time, as well as the increasing amount of and variety of property,

called into existence the court of chancery. The office of chancellor had been established before the Norman conquest, he being the personal adviser and representative of the crown; and there had long existed the special council, composed of the chancellor, the treasurer, the chief judiciary and others appointed by the king, a body which usually took cognizance of causes which other judges were incapable of determining. From the existence of these officials, and out of the large number of judicial complaints (actions presented to the king by the increasing wealth and activity of the nation), there arose the jurisdiction of the chancellor acting in the name and place of the sovereign. As the representative of the king he exercised grace, tempered the strict rules of law by considerations of equity, absolved suitors from engagement into which they had been induced to enter by fraud, accident or mistake, and gave remedies for which the courts of the common law were owing to the fixed nature of their proceedings inadequate.

The jurisdiction of courts of equity over cases arising out of fraud has thus been established, notwithstanding the after introduction of the actions of replevin, case, trover and assumpsit, and the creation by the common-law courts of rules permitting fraud to be set up and proven as a defense to undertakings. In England the courts of chancery have continued to insist that every case of fraud is cognizable by it, while, whether it will proceed to hear a dispute arising out of such matter, is a thing about which it exercises its discretion. Pomeroy's Equity Jurisprudence, Sec. 912.

In England, jurisdiction of the High Court of Chancery, acting in the place and stead of the king, had not necessarily any limit but its own discretion and the custom which grew up as to the circumstances under which it would proceed to hear and determine; for both as to jurisdiction and procedure it was always and is a court for the administration of the law, not for doing that which might or may please the chancellor. Chancery is ordained to supply, not to subvert the law. (4 Bacon's Works, 488.) In this country, since the establishment of constitutional government,

courts of all kinds have had and exercise only such jurisdiction as under the constitution is permitted (Pomeroy's Equity, Sec. 914), and what is termed the unlimited jurisdiction that has been exercised by the English chancellors nowhere exists in the United States. Pomeroy's Equity, Secs. 282, 914.

The United States Judiciary Act declares that suits in equity shall not be maintained in the courts of the United States in any case where plain, adequate and complete remedy may be had at law.

This enactment is but a statutory statement of the law of Illinois. Our statute, section 1 of chapter 22, provides:

"The several circuit courts of this State and Superior Court of Cook County, in all causes of which they may have jurisdiction as courts of chancery, shall have power to proceed therein according to the mode hereinafter prescribed; and where no provision is made by this act, according to the general usage of courts of equity."

The general usage and practice of courts of equity is, not to take jurisdiction when the complainant has a full, plain and adequate remedy at law. Coughron v. Swift, 18 Ill. 414–416; Puterbaugh v. Elliot et al., 22 Ill. 157–159; City of Peoria v. Kidder, 26 Ill. 351; Bigelow v. Andress et al., 31 Ill. 322–333; Beauchamp v. Putnam, 34 Ill. 378; Chittenden v. Rogers, 42 Ill. 95; McConnel v. Dickson, 43 Ill. 99–109; School Directors v. Miller, 54 Ill. 338; Parker v. Garrison, 61 Ill. 250–254; Comstock v. Henneberry, 66 Ill. 212; Chicago City Ry. Co. v. General Electric Co., 74 Ill. App. 465; Catholic Bishop of Chicago v. Chiniquy, 74 Ill. 317; Craft v. Dickens, 78 Ill. 131; Imperial Fire Ins. Co. v. Gunning, 81 Ill. 236; Long v. Barker, 85 Ill. 431; Shufeldt v. Boehm, 96 Ill. 560–565; Scripps v. King, 103 Ill. 469–471; Gore et al. v. Kramer, 117 Ill. 176–182; County of Cook v. Davis, 143 Ill. 151–154; Black v. Miller, 173 Ill. 489; Reedy v. Chicago Vinegar Yeast Co., 30 Ill. App. 153; Richards v. L. S. & M. S. Ry. Co., 25 Ill. App. 344–349; Durham v. Field, 30 Ill. App. 121–124; Phoenix Mutual Life Ins. Co. v. Bailey, 13 Wallace, 616; Bay City Bridge

Co. v. Van Etten, 36 Mich. 210; Glastonbury v. McDonald, 44 Vt. 450; Suter v. Mathews, 115 Mass. 253; Ochsenbein v. Papilier, L. R. 8 Ch. App.; Pomeroy's Eq. Juris. Sec. 178; Hiare v. Brembridge, 8 Ch. App. 22; Newham v. May, 9 Price 749–751; Home Life Ins. Co. v. Siliz, 81 Md. 204; Town of Venice v. Woodruff, 62 N. Y. 462; Miller v. Scammon, 52 N. H. 609; Taylor v. Wolverton, 37 Ill. App. 358–362.

In cases of concurrent jurisdiction of courts of law and equity, the fact that the legal remedy is not full, adequate and complete, is the real foundation of jurisdiction. Pomeroy's Equity, Sections 139–220; Story's Equity Jurisprudence, Section 33; Bispham's Principles of Equity, p. 6–9.

In this connection it is to be borne in mind that courts of law existed from time immemorial; that the court of chancery arose out of the inability of the common law courts to give full, adequate and complete relief; and that the court of chancery has never had any other reason for its existence; a necessity it was and is, but only because of the insufficiency of the law courts. Practically, it is of but little consequence whether courts of equity refuse to take cognizance of cases wherein the remedy at law is full, complete and adequate, because under these circumstances they hold they have no jurisdiction, or because (as in England) they affirm their jurisdiction but decline to exercise it. Pomeroy states the rule as follows :

" The principle may be stated in its broadest generality, that in cases where the primary right, interest or estate to be maintained, protected or redressed is a legal one, and a court of law can do as complete justice to the matter in controversy, both with respect to the relief granted and to the modes of procedure by which such relief is conferred, as could be done by a court of equity, equity will not interfere even with those peculiar remedies which are administered by it alone—such as injunction, cancellation, and the like—much less with those remedies which are administered both by it and by the law, and which, therefore, belong to its concurrent jurisdiction.

The insufficiency and inadequacy of the legal remedies to meet the requirements of justice under any given state of circumstances where the primary rights, interests, or estates of the litigant parties to be enforced or maintained

are wholly legal, constitute the foundation of the concurrent jurisdiction of equity to interfere under those circumstances. They are the essential facts upon which the existence of that jurisdiction depends."

It is urged that whenever fraud is charged in a bill and made the groundwork of the action, a court of equity has concurrent jurisdiction, notwithstanding the remedy at law may be full, complete and adequate. Such, as we have already seen, is not the rule laid down by Pomeroy, nor is it the practice in the United States. Gore et al. v. Kramer, 117 Ill. 176–182; Coughron v. Swift, 18 Ill. 414; Bigelow v. Andress, 31 Ill. 322–333–335; Imperial Fire Insurance Co. v. Gunning, 81 Ill. 236; Pomeroy's Equity Jurisprudence, Sec. 178; Bay City Bridge Co. v. Van Etten, 36 Mich. 210; Glastonbury v. McDonald, Adm'r, 44 Vt. 450; Suter v. Mathews, 115 Mass. 253.

Nor do the equity courts of England take jurisdiction of all cases wherein they are asked so to do upon allegations of fraud. Ochsenbein v. Papelier, L. R. 8 Ch. App.; Hiare v. Bembridge, L. R. 8 Ch. App. 22.

Not every case of fraud in a horse trade will give jurisdiction to a court of equity. Newham v. May, 9 Price 749–751.

Nor will a court of equity take jurisdiction to cancel an instrument where the complainant has a plain and adequate remedy at law. Black v. Miller, 173 Ill. 480; Reedy v. Chicago Vinegar and Yeast Co., 30 Ill. App. 153; Venice v. Woodruff, 62 N. Y. 462.

While it is true that in their endeavors to supply remedies existing because of the insufficiency of the common law courts, the early chancellors did often evade and disregard the rules of the common law—in some instances exercised criminal jurisdiction—yet for centuries it has been an established doctrine that equity follows the law, and never overrides it. Thus the chancery courts in the United States in considering the taking of jurisdiction, where there is a plain and adequate remedy at law, have, since the beginning of constitutional government, found themselves confronted by the constitutional right of trial by jury.

Arising and existing as courts of chancery have, to afford that adequate and complete relief which the common law courts could not, how, under our constitution, can they proceed to the trial of causes in which the common law power to afford adequate and complete relief is plain?

The plain, adequate and complete relief which a court of law can afford need not be the same kind of relief that a court of equity could give in order that the latter should thus be in a position where it can not take jurisdiction.

If one is sued upon a promissory note to which he has a perfect defense at law, he is not entitled to an injunction from a court of equity because relief by injunction is a thing a law court can not give; nor is one entitled upon a past due note, against which he has a good defense at law, to a decree for the cancellation and surrender of the instrument, notwithstanding he can not, by a judgment at law, obtain this.

In the present case the bill alleges that there are now within reach a number of competent witnesses by whom the alleged fraud and deceit can be proven, but that orator fears that by death or otherwise the testimony of such witnesses may become unavailable.

If this be the case the complainant can maintain a bill to take the testimony of these persons, but when the depositions have been taken, such suit will come to an end. Jurisdiction obtained for this purpose will not be retained as to the expected controversy for use in which the depositions are taken. Pomeroy's Equity, Sec. 211.

Is is urged that the defendant may begin suit in any State of the Union, and that when it will bring action can not be known. Each of the policies provide that suit thereon must be brought within one year after the death of the assured or no recovery can be had thereon. This is a valid contract, which the law courts will enforce. The bill does not charge that complainant is informed, believes or states that the defendant purposes to delay bringing suit or to bring it outside the limits of the State of Illinois or the County of Cook. If the insured were living, this action

might be maintained; the bill would then be purely for a cancellation of policies alleged to have been obtained by fraud.

So soon as the death of the insured happened the relation of the parties changed; the contract, before that time executory as to each, became, as to the insured, executed— *i. e.*, he had paid all agreed to be rendered by him. Thereafter the duty created by the contract rested alone upon complainant. Its promise and its obligation now is solely to pay a determined sum of money within a defined time. Nothing by way of pledge or pawn is held as security for this promise; none of its assets are tied up; it in nowise is hindered in the discharge of business by this obligation, suit upon which, when this bill was filed, July 25, 1901, would have been barred January 30, 1902, unless before that time action had been brought thereon.

The complainant was not, at the filing of this bill, in need of relief of any kind. Mary E. Shenehon was claiming that the complainant owed her $5,000; unless she brought suit thereon before January 30, 1902, the claim would be barred.

Complainant had but to wait a short time and if suit were not brought before the defendant's time lapsed, whether there were or not the fraud alleged, no recovery could be had; while if suit were brought in apt time it had a perfect remedy at law.

The present bill is a plain, undisguised attempt to deprive the defendant of an opportunity to have the alleged facts as to the procuring of the policy by fraud tried by a jury.

It can not be pretended that a judgment for complainant in a suit at law will not as fully, completely and adequately relieve it from the claim of Mary E. Shenehon as could a decree of a court of chancery.

If the complainant can succeed in this case the greater portion of all suits upon fire and life insurance policies will be swept into the equity court.

The majority of such suits are defended upon the ground of fraud by the insured either in the procuring or after the insurance.

Nor does the fact that such suit was first brought by the complainant in a court of equity entitle it to have it there continued and the defendant thus deprived of her constitutional right to a trial by jury.

The case is not one wherein, under the constitution of this State, the chancellor may step in and deny to the defendant the right of trial by jury.

To abhor fraud is instinctive. The allegations of fraud contained in this bill are calculated to excite indignation, inflame passion and prejudice the judgment. One naturally feels that fraud, gross, palpable, monstrous, such as is set forth in this bill, should not be allowed to succeed—that it must be thwarted. Swayed by this feeling judges sometimes forget that these are but charges, not proof, and that however vile the meanest wretch may be painted, he is entitled to a fair hearing and to every right given by the law of the land. A court of equity will never be unjust to a defendant in order that it may do justice to the complainant.

It is not always easy in the face of allegations of great wrong to pause and remember that in the administration of justice the first maxim is " hear both sides," and hear them before (by injunction or receiver) the rights of either have been, by judicial action, practically foreclosed, denied or sacrificed.

The order of the Superior Court granting an injunction is reversed.