## Martin Madson, Appellee, v. James W. Clark, Appellant.

### Gen. No. 15,924.

1. CHANCERY—*what essential to jurisdiction to grant rescission of contract.* "In order for the court to grant relief by way of rescission, the case presented must embrace facts bringing it within some recognized head of equity jurisdiction, such as fraud, accident, mistake, duress, undue influence, or the like; or it must at least be shown that the complainant, if denied equitable relief, will sustain an injury for the redress of which a court of common law can afford no adequate remedy."

2. CHANCERY—*when relief by way of rescission of contract not granted.* Rescission in equity will not be awarded if it is not possible to place the parties *in statu quo.*

Bill in chancery. Appeal from the Superior Court of Cook

county; the Hon. FARLIN Q. BALL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Reversed. Opinion filed October 25, 1911.

**Statement by the Court.** Appellee brought this suit in chancery in the Superior Court, May 27, 1908, against appellant and the Madson-Steele Company, a corporation, for the rescission and cancellation of a contract between appellee and appellant, bearing date March 4, 1908. The bill charges, in substance, that in February, 1908, and for many years prior thereto, The Madson-Steele Company engaged in the sale of jewelry at wholesale and retail on the mail-order plan, and had about 10,000 customers; that it was then in an embarrassed condition financially and had requested its creditors to extend their indebtedness for another year, and was refused; that it was later thrown into bankruptcy proceedings and a receiver appointed thereunder, who took charge of the business; that appellee and appellant, Clark, entered into an agreement that Clark should buy in the stock of merchandise of said corporation at said receiver's sale, and would then use the same in continuing business under the name of The Madson-Steele Company; and that said contract was partly reduced to writing, the written portion of which provides as follows:

"The said James W. Clark hereby agrees to employ the said Martin Madson for a period of two months, commencing March 10, 1908, and ending May 10, 1908, and pay to said Martin Madson fifty dollars ($50) per week during said time, for which consideration the said Martin Madson agrees to give his sole time, attention and best efforts in the interests of the said James W. Clark by influencing customers and former customers of The Madson-Steele Company, a corporation, to trade with the said James W. Clark, Moore & Evans, F. E. Morse & Co., or The Madson-Steele Company, if the said Clark acquired the business of The Madson-Steele Company, now in bankruptcy, or either of said companies as the said Clark may direct.

"It is further agreed that the said Martin Madson will continue to give his sole time, attention and best efforts to the interests of the said James W. Clark in consideration of ten per cent. (10%) commission on all new business (where sales are made) brought in by the said Martin Madson up to January 1, 1909, and that thereafter the said Martin Madson shall continue said services for the said Clark on the same conditions and basis of compensation as to commissions so long as said Martin Madson and James W. Clark are mutually satisfied.

"Dated the 4th day of March, 1908.

(Signed)    JAMES W. CLARK.
MARTIN MADSON."

The bill further charges that said contract was partly verbal and partly in the writing above quoted, and that as part and parcel of said contract appellee delivered to appellant all the certificates of stock of said corporation, the resignations of all the officers and directors thereof, the list of its mail-order customers, and transferred to appellant in writing the lease to the premises in the Masonic Temple occupied by said company; that on March 23, 1908, all of said company's tangible assets were duly sold to said appellant; that immediately after signing said contract appellee began his work of sending out letters, circulars, etc., to hold the trade until the stock of merchandise should be acquired by appellant; that appellee performed his duties in pursuance of the said agreement from March 10, 1908, until May 10, 1908, and was paid therefor the sum of fifty dollars per week by appellant; that on said last date appellant summarily dismissed appellee and refused to pay appellee said ten per cent. commissions, and retained as his own the capital stock of The Madson-Steele Company, its good will in connection with the use of its name, its organization and the lease to the premises occupied by said corporation.

On final hearing on exceptions to the master's report

the court decreed that said contract be rescinded and canceled, and that within five days appellant should deliver to the clerk of the court for appellee all the capital stock, the stock book, corporate seal, and the resignations of the officers of the corporation; that the assignment of the lease be canceled, and that appellant shall surrender possession of the premises named in the lease; and that appellant be perpetually enjoined from using the name of The Madson-Steele Company.

The master in chancery made his findings to the effect that appellee had proved the allegations of his bill and had complied with his part of the contract; and that appellant had an erroneous idea as to the rights, duties and obligations existing between him and appellee, and illegally and wrongfully discharged appellee and prevented him from carrying out his part of the contract. The master found also that the mail-order list aforesaid was purchased at the receiver's sale in bankruptcy by appellant, the same being property of the said corporation, and that said mailing list is now the property of appellant. The court approved the report as to all of said findings of the master.

EDWY LOGAN REEVES, for appellant.

J. ERB and JOHN P. KLEIN, for appellee.

MR. JUSTICE DUNCAN delivered the opinion of the court.

Appellant insists that the court erred in holding that the contract between appellant and appellee was not wholly expressed in the writing between them; and that the court also erred in finding that appellee had complied with his contract as far as permitted to do so by appellant, and that appellant had not performed his agreement. After examining the evidence in the record carefully we are of the opinion that appellant's

contentions in those particulars cannot be sustained. The evidence in the record is ample to sustain the specific facts as found by the master and confirmed by the court.

There is no evidence in the record and no finding by the court that appellant entered into said contract with the fraudulent intent to deprive appellee, Madson, of his property and business. There is no evidence in the record that appellant was guilty of any fraud whatever. The evidence simply shows a breach of the contract by appellant, and that is the sum and substance of the findings by the master and by the court. "In order for the court to grant relief by way of rescission, the case presented must embrace facts bringing it within some recognized head of equity jurisdiction, such as fraud, accident, mistake, duress, undue influence, or the like; or it must at least be shown that the complainant, if denied equitable relief, will sustain an injury for the redress of which a court of common law can afford no adequate remedy." 24 Am. & Eng. Ency. of Law (2nd Ed.), 611; Haugle v. Yerkes, 187 Ill. 358; Gore v. Kramer, 117 Ill. 176.

The general rule is that the equitable relief of rescission of the contract will not be granted for a mere breach of the contract. The remedy in such a case is to be found in an action at law. There are some cases, however, where the equitable relief is granted for a breach of the contract in which the remedy at law is clearly inadequate. In this case the cause of action is for the breach of a simple contract of employment under an agreement to pay a commission on all new business, and in which the breach arose by reason of a disagreement as to the meaning of the term "new business." There appears no reason, so far as we can see, why appellee may not have a complete and adequate remedy at law.

Other reasons might be given why the equitable remedy should not be granted in this case. The object

of rescission of a contract is that the parties may be placed *in statu quo;* that is, in the same situation that the parties occupied before the contract was made. It is not possible now for appellant to return the stock of goods purchased by him to the receiver in bankruptcy or to the complainant, and no such decree was given. It is not possible for the court to decree the return to appellee of the mail-order list, which he says was the most valuable thing he agreed to turn over to the appellant, and which appellee admits appellant had to afterwards purchase of the receiver in bankruptcy, as it was held to be property of the corporation. It was a part of appellant's agreement to buy the stock of jewelry, as contended by appellee, and having bought it from the receiver, as well as the mailing list, the court had to recognize appellant's legal right thereto and allow him to retain them. It is admitted by appellee, virtually, that none of the other things turned over by him to appellant under his contract, except the lease and the mailing list, was of value. Appellee has not returned or offered to return to appellant the consideration of $50 per week for two months' work that appellant has already paid to him. A party cannot have a contract rescinded, as a general rule, and at the same time retain a part of the consideration received by him. Rigdon v. Walcott, 141 Ill. 649; Buchenau v. Horney, 12 Ill. 336.

For the foregoing reasons appellant's contention that appellee was not entitled to the equitable relief of rescission and cancellation is sustained; and the decree of the lower court is accordingly reversed.

*Reversed.*