The Town of Venice, Appellant, *v.* Dorcas Ann Woodruff et al., Respondents.

A court of equity will not interfere to decree the cancellation of a written instrument, unless some special circumstance exist establishing the necessity of a resort to equity to prevent an injury which might be irreparable, and which equity alone is competent to avert.

The mere fact that a defence exists to the instrument is insufficient. Nor is it sufficient that evidence, to establish the defence, may be lost by delay ; as a summary mode is provided by statute for perpetuating evidence, and an action is not necessary for that purpose.

An equitable action cannot be maintained to have a written instrument, purporting to be an obligation for the payment of money, surrendered and canceled, where the instrument is void, even in the hands of a *bona fide* holder, and where the burden of proving its validity rests upon the holder, if he seeks to enforce payment.

It is not the province of a State court to interfere, for the purpose of preventing a resort to the federal courts for the enforcement of an obligation of a class decided to be invalid by the State courts, on the ground that it may be held valid in the federal courts.

An equitable action will not be sustained to restrain the transfer, to a *bona fide* holder, of an obligation held by the courts of this State invalid in the hands of such a holder, on the ground that a different rule prevails in the federal courts, unless it be established that the present holders are not *bona fide* holders; and this, although a transferee might, while the present holder cannot, resort to the federal courts.

The mere fact that numerous independent parties hold separate instruments upon which they might bring separate suits, is not sufficient to justify a court of equity in entertaining an action by the maker to compel them to litigate their claims in a forum which he selects. He must, in addition, make out a case which would sustain the action against one of them alone.

Accordingly *held*, that an action could not be maintained against various holders to restrain the transfer and for the cancellation of bonds issued by defendant under the act chapter 375, Laws of 1852, to aid in the construction of a railroad, which bonds were void because issued without the requisite consent of two-thirds of the tax-payers of the town, it not having been found that defendants were not *bona fide* holders.

Also, *held*, that plaintiff was not entitled to equitable relief upon the ground that its bonds were issued directly to the railroad company instead of being sold by the commissioners; as to authorize the relief it should have been made to appear that defendants were not *bona fide* holders.

As to whether the statute of limitations is a defence to such an action, *quære.*

It is, under any circumstances, within the discretion of a court of equity whether to interfere affirmatively and relieve a party from an invalid instrument; and the relief will not be granted, except upon condition that the party surrender what he has received for or under the instrument.

(Argued June 3, 1875; decided September 21, 1875.)

Appeal from judgment of the General Term of the Supreme Court in the fourth judicial department, affirming a judgment in favor of defendants entered upon the report of a referee.

This action was brought to have certain bonds, issued by the supervisor and railroad commissioners of the town of Venice, delivered up and canceled, and to restrain defendants, the holders of said bonds, from transferring them.

The facts, as found by the referee, were, in substance, these: The bonds in question were twenty-five in number of $1,000 each, and were issued by said railroad commissioners and the supervisor of the town under the act chapter 375, Laws of 1852, to pay for $25,000 of the stock of the Lake Ontario, Auburn and New York Railroad Company. Five of the bonds were sold by the supervisor and commissioners for cash, and the residue were transferred by them directly to the company at par to apply in payment of the stock subscribed for; and on receipt thereof, and of the money received for the bonds sold, the company issued to the town a certificate for the stock subscribed for, which the plaintiff still holds. The defendants, holders of the twenty bonds delivered directly to the company, took the same without being informed that they were so delivered. The bonds were issued without the assent of two-thirds of the resident tax-payers of the town having been obtained, as required by said act. The referee, upon these facts, directed a dismissal of the complaint. Judgment was entered accordingly.

The General Term affirmed the judgment as to all of the defendants but two, on the ground that the action was barred by the statute of limitations. As to those the judgment was

reversed and new trial granted. Plaintiff appealed to this court from so much of the judgment as affirmed judgment below.

*D. Pratt* for the appellant. The requirements of the statute as to procuring the requisite assents not having been complied with, the bonds were void even in the hands of *bona fide* holders. (*Starin* v. *Genoa*, 23 N. Y., 439; *People ex rel.* v. *Mead*, 24 id., 114; *People ex rel.* v. *Mead*, 36 id., 224.) The court in the exercise of its equitable jurisdiction had the power and it was its duty to grant the relief prayed for in the complaint. (2 Story's Eq., 701, §§ 825, 826, 629, 700; *Peake* v. *Highfield*, 1 Russ., 559; *N. Y. and N. H. R. R. Co.* v. *Schuyler*, 17 N. Y., 592; 34 id., 592; *Mayor, etc.,* v. *Pilkington*, 1 Atk., 283.) The statute of limitations constituted no defence. (*Miner* v. *Beekman*, 50 N. Y., 338; *People* v. *Rens. Ins. Co.*, 38 Barb., 336; Story Eq. Jur., § 828; *Harmon* v. *Remsen*, 23 How., 174; *Conover* v. *Mayor, etc.*, 14 id., 550; *Erie R. Co.* v. *Ramsey*, 57 Barb., 449; *Schell* v. *Erie R. Co.*, 54 id., 368; *Radcliff* v. *Rowley*, 4 Edw., 653; *Varick* v. *Edwards*, 11 Paige, 290; *Bartlett* v. *Judge*, 21 N. Y., 200; *Hubbell* v. *Midbury*, 53 id., 99.) The fact that the bonds were held by defendants severally, constituted no objection to plaintiffs' maintaining the action. (*N. Y. and N. H. R. R. Co.* v. *Schuyler*, 17 N. Y., 592; *Mayor, etc.,* v. *Pilkington*, 1 Atk., 283; *Campbell* v. *Morkay*, 1 M. & C., 623; *Brinkerhoff* v. *Brown*, 6 J. Ch., 139; *Fellows* v. *Fellows*, 4 Cow., 682.)

*David Wright* for the respondents. The Supreme Court, as a court of equity, had no jurisdiction to try the only issue tried. (Story's Eq. Jur., § 694; *Allerton* v. *Belder*, 49 N. Y., 373; *Field* v. *Holbrook*, 6 Duer, 597; *Cadman* v. *Kingsley*, 4 Edw., 627: *Grand Chute* v. *Winegar*, 15 Wall., 374; *N. Y. and N. H. R. R. Co.* v. *Schuyler*, 34 N. Y., 30.) The action was barred by the statute of limitations. (Code, § 91, sub. 6; Story's Eq. Jur., § 333; *Conkey* v. *Bond*, 36 N. Y., 427; *Moore* v. *Greene*, 19 How. [U. S.], 69; *Bruce* v. *Telson*, 25

N. Y., 194; 5 Lans., 51; *Bertine* v. *Varian*, 1 Edw. Ch., 343; *Erickson* v. *Quinn*, 3 Lans., 294.) The equities are all in favor of defendants. (*Gould* v. *Sterling*, 23 N. Y., 495; *N. Y. and N. H. R. R. Co.* v. *Schuyler*, 34 id., 59; *Will. Canal Co.* v. *Hathaway*, 2 Kent's Com., 621, note *b*; *F. and M. Bk.* v. *B. and D. Bk.*, 16 N. Y., 142; *N. Y. and N. H. R. R. Co.* v. *Schuyler*, 34 id., 65–73; *Gilbert* v. *Haven*, 25 id., 601; *Williams* v. *Village of D.*, 3 Lans., 51; A. & A. on Corp., §§ 310, 311.) The bonds should not be canceled. (Story on Agency, § 264.) The fact that the bonds were purchased of the railroad company did not prevent the purchaser from being a *bona fide* holder. (*Starin* v. *Genoa*; *Gould* v. *Sterling*, 23 N. Y., 495; *M. Bkg. Assn.* v. *N. Y. and S. W. L. Co.*, 35 id., 505; *Bk. of N. Y.* v. *Bk. of Ohio*, 29 id., 619; *Bk. of Genesee* v. *Patchen Bk.*, 19 id., 309; *Otter* v. *Brew. Pet. Co.*, 36 How., 330; *E. N. Y.*, etc., *R. R. Co.* v. *Lightfall*, 5 Abb. Pr. [N. S.], 458, 481; *Magee* v. *Barber*, 30 Barb., 246; *De Groff* v. *Am. L. Thread Co.*, 21 N. Y., 124.)

RAPALLO, J. The referee has found that all of the bonds, which the plaintiff seeks by this action to have delivered up and canceled, were made and issued without the requisite consent of two-thirds of the tax-payers of the town. That fact according to the decisions of this court rendered the bonds void, even in the hands of *bona fide* holders. (*Starin* v. *Genoa*, 23 N. Y., 439; *People* v. *Mead*, 24 id., 114; *Same* v. *Same*, 36 id., 224.)

It was further held in these cases, that the burden of proving the requisite consent of the tax-payers, rested upon the party seeking to enforce payment of the bonds, and that the affidavit directed by the act under which the bonds purported to be issued, to be filed with the consent, was not evidence of the requisite consent. It is therefore settled by the adjudications of this court, that no recovery can be had in an action upon these bonds, without affirmative extrinsic proof of the requisite consent. The fact being found that

such consent was not given, it is clear that a perfect defence to the bonds exists, should an action be brought upon them in any court of this State, either by the present holders of the bonds, or by any person to whom they may be transferred.

Upon this state of facts the question arises, whether an equitable action can be maintained by the town to restrain the holders of the bonds from suing upon or transferring them, and to compel the surrender and cancellation of the instruments.

The cases in which a court of equity exercises its jurisdiction to decree the surrender and cancellation of written instruments are, in general, where the instrument has been obtained by fraud, where a defence exists which would be cognizable only in a court of equity, where the instrument is negotiable, and by a transfer the transferree may acquire rights which the present holder does not possess, and where the instrument is a cloud upon the title of the plaintiff to real estate. Under the chancery system, where a bill of discovery was necessary to establish the defence, the court having acquired jurisdiction of the case for the purpose of discovery, might proceed and award relief, but this ground of jurisdiction no longer exists. It is true that the jurisdiction of the court of chancery has been asserted to decree the surrender of every instrument which ought not to be enforced, whether void at law or not, and whether void from matter appearing on its face, or from matter which must be established by extrinsic proof. (*Hamilton* v. *Cummings*, 1 J. Ch., 520–522, 523.) But Chancellor Kent in the case cited, in asserting this jurisdiction recognizes the necessity of showing strong grounds for the exercise of the power, and endeavors to reconcile the apparently conflicting English authorities, by adverting to the general principle that the exercise of the power is to be regulated by sound discretion, as the circumstances of the individual case may dictate, and that a resort to equity to be sustained, must be expedient either because the instrument is liable to abuse from its negotiable

nature; or because the defence not arising on its face may be difficult or uncertain at law; or from some other special circumstances peculiar to the case, and rendering a resort to equity highly proper. And it is now well established that equity will not interpose to decree the cancellation of an instrument, the invalidity of which appears upon its face. (Story Eq., § 700, *a.*)

There must exist some circumstance establishing the necessity of a resort to equity, to prevent an injury which might be irreparable, and which equity alone is competent to avert. If the mere fact that a defence exists to a written instrument were sufficient to authorize an application to a court of equity to decree its surrender and cancellation, it is obvious that every controversy in which the claim of either party was evidenced by a writing could be drawn to the equity side of the court, and tried in the mode provided for the trial of equitable actions, instead of being disposed of in the ordinary manner by a jury.

Whether, therefore, the question be regarded as one of jurisdiction or of practice, it is established, by the later decisions, that some special ground for equitable relief must be shown, and that the mere fact that the instrument ought not to be enforced is insufficient, standing alone, to justify a resort to an equitable action. (*Grand Chute* v. *Winegar*, 15 Wall., 355; *Minturn* v. *Farmers' Loan and Trust Company*, 3 N. Y., 498; *Perrine* v. *Striker*, 7 Paige, 598; *Morse* v. *Hovey*, 9 id., 197; *Field* v. *Holbrook*, 6 Duer, 597; *Allerton* v. *Belden*, 49 N. Y., 373; *Reed* v. *Bank of Newburgh*, 1 Paige, 215, 218.)

In the present case, in so far as the invalidity of the bonds results from the want of consent of the tax-payers, there is no ground whatever shown for resorting to an equitable action. Not only is the want of the consent a perfect defence at law, but the onus of proving the consent is upon the party seeking to enforce the bond; and the court cannot assume that he will be able to establish a fact that does not exist, and of which there is no documentary evidence. If it be said that the town

may, by delay, lose evidence, now existing, which would be available to meet and rebut false testimony, one decisive answer is, that the statutes now provide a summary mode of perpetuating testimony in all cases, and an action is not necessary for that purpose. The case is analogous to those of *Field* v. *Holbrook* (6 Duer, 597), and *Allerton* v. *Belden* (49 N. Y., 373).

It is urged that the action should be sustained for the purpose of preventing a transfer of the bonds to a *bona fide* holder. This court has held that such a transfer could not prejudice the plaintiff, as the defence would be available even against a *bona fide* holder. (23 N. Y., 439.) But it is said that, although such is the rule in this State, a different rule has been adopted in the courts of the United States, and the bonds might ·be transferred to a *bona fide* holder, who might sue in those courts. There would be force in this argument, provided it were established in the case that the present holders of the bonds were not *bona fide* holders. In that case it might be proper for a court of equity to prevent their subjecting the town to liability by a transfer of the bonds. But ·if they are themselves *bona fide* holders, there is no justification for interfering with the right of transfer. In contemplation of law, the transferees would acquire no greater rights than are possessed by the present holders.

The real purpose of the litigation seems to be to prevent a resort to the courts of the United States for the collection of these bonds ; and the question is, whether it is the province of a court of equity in a State to interfere for the purpose of preventing a resort to the federal courts for the enforcement of obligations on the ground that they may be held in those courts to be valid, while, according to the decisions of the State courts, the same obligations are held to be void. I apprehend that the power of a court of equity to decree the surrender and cancellation of instruments has never before been appealed to or exercised for such a purpose. Equity will interfere to control the action of parties,

and restrain them from transferring negotiable obligations, on the ground that it is against conscience to allow them to create in their transferee a right or equity which they themselves do not possess.   But where the effect of a transfer is not to change in any respect the rights or equities of the parties, I am not prepared to hold that the allegation that the transferee might resort to a tribunal in which a rule of decision prevails, or may prevail, differing from that of the court which is asked to enjoin the transfer, is sufficient to justify the interference asked.   The wrong sought to be prevented by such a proceeding is not any wrongful act of any party, but a decision of another court.   The facts of the case and the abstract rights of the parties are not changed by the transfer.   The greatest effect it can have is to enable a transferee to sue in a court to which the present holder could not resort.   This, in general, would not be regarded as any wrong which a court of equity would restrain.   If it is a wrong in this case it must be on the assumption that the federal court will render a decision at variance with the decision of this court.   I am of opinion that such an apprehension is not a legitimate ground for the action of a court of equity in restraining a transfer or directing the cancellation of the instrument.   There is no finding that the present holders are not *bona fide* holders of the bonds.   As the judgment entered upon the report of the referee was in favor of the defendants it could not be disturbed unless facts were found showing that the conclusions of law were erroneous. We have held over and over again that the facts showing error in the legal conclusions must be found, and that the appellate court will not search for them in the evidence.   In this case the findings are in favor of the *bona fides* of the defendants.   As to five of the bonds it is found that they were sold and delivered by the supervisor and railroad commissioner to Hutchinson & Murdock, who paid for them par in cash.   This finding is not weakened by the further finding that the money was in the first instance advanced on a pledge of the bonds, which was subsequently converted into

a sale. As to the twenty bonds which were issued direct to the railroad company, the referee finds that the holders purchased them without being informed that they had been delivered directly to the company. No fact is found impeaching the *bona fides* of the holders of any of the bonds, and therefore it does not appear that any transfer of them can be made which will confer upon the transferees any greater equities than are possessed by the present holders.

The fact that twenty of the bonds were delivered directly to the railroad company instead of being sold by the railroad commissioners, is relied upon as a ground for granting relief as to those bonds. In the case of *People* v. *Mead* (24 N. Y., 124, 125) it seems to be considered that this fact would not constitute a defence, even in the State court, as against a *bona fide* holder of the bonds. But to entitle the town to affirmative equitable relief on that ground, it should have been made to appear that the defendants were not *bona fide* holders; which, as has already been shown, the plaintiff has failed to do.

Another ground urged in support of the claim to equitable relief is, that it is necessary for the purpose of avoiding a multiplicity of suits; and the case of *The New York and New Haven Railroad Co.* v. *Schuyler* (17 N. Y., 592, and 34 id., 30) is referred to as an authority in point. But that case was essentially different from the present. There the defendants all claimed shares in the same corporation, which had authority to issue only a limited number; shares had been issued in excess of that limit, and some of them must be rejected. The spurious shares were held to be a cloud upon the title of the holders of the genuine shares, and the corporation was held to be the proper representative of the genuine stockholders to seek the interposition of the court to remove that cloud. Here was a solid ground upon which the plaintiff could found its application for relief. The plaintiff having this standing in court, it was held that all the alleged spurious shareholders were properly joined as defendants. But jurisdiction was not entertained on the sole ground that

the holders of spurious shares were numerous.. In the present case there is no question of any cloud upon the title. The plaintiff seeks to have canceled certain written instruments purporting to be obligations for the payment of money, which are held by various independent owners. If it fails to make out a case which would sustain an action for that purpose against any one of them alone, the mere fact that there are several such holders, is not of itself sufficient ground for entertaining the suit. If the facts were such as would have sustained the action against one person had he been the holder of all the bonds, then the case of the New Haven Railroad Company would be an authority in favor of the position, that if there were several holders all might be joined as defendants. But it does not support the position, that the mere fact that numerous independent parties hold separate instruments upon which they might bring separate suits is sufficient to justify a court of equity in entertaining an action by the debtor to compel them to litigate their claims in an action in the form which he selects.

Under any circumstances, I am inclined to concur with Judge TALCOTT, in the opinion that a court of equity would not interfere affirmatively to relieve the plaintiff against these bonds, except upon condition that it surrendered what it had received for them. The relief sought is discretionary with the court; and the plaintiff is not entitled to it as matter of absolute right. Actions of this class are in that respect governed by the same rules which apply to actions for specific performance; and relief will never be granted except upon equitable terms, where the case is such as to call for the imposition of terms. (Story Eq. Jur., §§ 692, 693, 696, and cases cited § 742.) But the reasons before given I deem sufficient to sustain the conclusion of the referee dismissing the complaint.

There is great doubt whether the defence of the statute of limitations is available in this case. In respect to the limitation of time it is analogous in principle to an action to remove a cloud upon the title to land; and in such cases I

do not understand the rule to be that the statute runs from the time the cloud was first created. (See *Miner* v. *Beekman*, 50 N.Y., 338; *Hubbell* v. *Medbury*, 53 id., 99; *Arnold* v. *Hud. R. Railroad Co.*, 55 id., 661.)

On the ground that the facts of the case are insufficient to justify the interposition of a court of equity to decree the surrender and cancellation of the bonds, or to restrain their transfer, so much of the judgment as is appealed from should be affirmed, with costs.

All concur; CHURCH, Ch. J., not sitting.

Judgment affirmed.