AMERICAN WATER-WORKS CO. OF NEW JERSEY *v.* VENNER *et al.*

(*Supreme Court, General Term, First Department.*   March 31, 1892.)

1. CORPORATIONS—ACTIONS—POWERS OF OFFICERS.

An officer of a corporation, merely as such, has no power to bring suit on its behalf, though in his opinion such suit may be necessary to protect the interests of the corporation.

2. SAME—CONSOLIDATION—CONTROL OF STOCK.

By an agreement, a corporation formed by the consolidation of two other companies issued a portion of its stock to one of the latter for the purchase of its interests, and the latter delivered a portion of the same to a third person for negotiation. *Held*, that the new company had no title to the stock so delivered, so as to enable it to restrain the dealings of such third person in relation thereto.

3. SAME—RIGHTS OF CONSOLIDATED COMPANIES.

In such a case, an allegation that the new company became the owner of all the rights and interests of the companies consolidated to form it does not show ownership in the new company of stock issued to one of the latter in purchase of such rights and interests.

4. SAME—PLEADING.

Nor is such ownership shown by an allegation that such new company is the owner of a credit mentioned in and all the rights under a contract between one of said old companies and defendant, where the latter company's right to the stock in question arose under a subsequent contract of consolidation, to which defendant was not a party.

5. SAME—RESCISSION OF CONTRACT.

To induce a purchase of bonds from and advances of money for the benefit of a corporation, the latter agreed to deliver certain stock. After the purchase of such bonds and making of such advances, the stock was delivered. *Held*, that such stock could not be recovered back, because the purchaser had not paid the full purchase price, without returning the benefits received by the seller.

6. SALE OF STOCK—ACTION FOR PRICE.

Under an agreement to give with bonds a certain amount of stock, after the delivery of the bonds, the purchaser of the bonds cannot be compelled to pay therefor until he has also received the stock.

7. INSOLVENCY—EVIDENCE—SUSPENSION OF BUSINESS.

The fact that a defendant has suspended business because of difficulties arising out of the commencement of an action does not necessarily prove his insolvency.

8. NEGOTIABLE INSTRUMENTS—REFUSAL TO ACCEPT DRAFT.

The refusal to accept a draft irregularly drawn is not a breach of a contract requiring the acceptance of a draft properly drawn.

9. INJUNCTION—FACTS SUBSEQUENT TO COMPLAINT.

Facts occurring after the complaint will not sustain a preliminary injunction granted thereon.

10. FOREIGN CORPORATIONS—RESTRAINING ACTION ON NOTES.

A foreign corporation will not be permitted to restrain a threatened suit on its notes, or their transfer for the purpose of suit, because the laws of the states in which its properties are situated permit writs of attachment to issue in such actions.

11. INJUNCTION—RESTRAINING ACTION AT LAW.

An injunction will not be granted to restrain threatened actions at law on promissory notes, where the defense claimed thereto is a defense at law, nor where reciprocal demands exist between the parties, which may be offset or counterclaimed.

Appeal from special term, New York county.

Action by the American Water-Works Company of New Jersey against Clarence H. Venner and another for an accounting. From an order granting a preliminary injunction defendants appeal. Reversed.

Argued before VAN BRUNT, P. J., and PATTERSON and O'BRIEN, JJ.

*Root & Clarke,* (*Elihu Root* and *Samuel B. Clarke,* of counsel,) for appellants. *Turner, McClure & Rolston,* (*Herbert B. Turner* and *David McClure,* of counsel,) for respondent.

VAN BRUNT, P. J.   The complaint in this action alleges the incorporation of the plaintiff in New Jersey, and that on the 1st of May, 1891, it became the owner and entered into possession of certain real and personal property,

rights, franchises, choses in action, and assets, situated in the states of Nebraska and Colorado, namely, the water-works, franchises, property, estate, and assets which had belonged to a corporation under the similar and same name, organized under the laws of Illinois, and which was known as the "Omaha Water-Works," by which the cities of Omaha, South Omaha, and Florence, Douglas county, Neb., and the inhabitants thereof, were supplied with water; and the property which had belonged to the Denver City Water-Works Company, a corporation organized under the laws of Colorado, consisting of the water-works situated in and by which the city of Denver and the towns of Barnham, Highlands, Ellyria, and Montclair, in the county of Arapahoe and state of Colorado, and the inhabitants thereof, are supplied with water. That on or about the 1st day of March, 1891, a contract was entered into between said the American Water-Works Company of Illinois, then being the owner of said water-works in Nebraska, and the Denver City Water-Works Company, aforesaid, then being the owner of the said water-works in Colorado, wherein it is recited, among other things, that whereas, the said companies regard the consolidation of their respective property and assets as advantageous both for economy and convenience of operation and maintenance of their respective properties, and for the strengthening of their respective positions, whereby it was agreed that a new corporation should be formed, whose name should be the American Water-Works Company, with a capital stock of $13,000,000,—$3,000,000 of preferred stock, and $10,000,000 of common stock; $1,501,000 of said preferred stock to be given to the Denver City Water-Works Company for distribution among the preferred stockholders of that company, and $1,000,000 to the American Water-Works Company, of Illinois, for the same purpose, and $499,000 of said stock to be kept in the treasury of the consolidated company as treasury stock, and the $10,000,000 of common stock to be divided equally between the two companies. The agreement further provided that each company was to convey to the new company its respective property and assets. The complaint further alleged that upon the same day another contract was entered into between said two companies and the firm of H. Venner & Co., whereby it was provided that the Denver City Company should forthwith upon the execution of the agreement deliver to Venner & Co. a large number of its general mortgage 5 per cent. 20-year gold bonds, (apparently of the face value of $1,000 each, although it nowhere distinctly appears,) and that Venner & Co. was to make disposition of these bonds in the manner named in said agreement, with the exception of 640 of the bonds, which were to be taken by Venner & Co. at the price of 90 and interest to date of delivery, and the purchase price credited to an account called the "Denver Construction Account." The agreement further recited that, as it was estimated that it would take a large amount of money in addition to the proceeds of said bonds to complete the work contemplated by the contract, provision was made for the sale of certain real estate, and that whatever sums should not be paid by the sales of real estate should be paid by the withdrawal of certain other bonds, which Venner & Co. were to take at 90 and interest; Venner & Co. to make advances, and be repaid each month, either by moneys from the sales of real estate, or by said new bonds at said prices. This agreement further recited that, as the Denver Company had found itself unable to raise money with which to complete its proposed work, and to secure the refunding of its 7 per cent. bonds, and that the agreement to transfer the properties of both said water-works companies to a new company was largely to aid in the accomplishment of this purpose, and to induce Venner & Co. to enter into the undertakings in said agreement contained upon their part to be performed, it was necessary to agree with Venner & Co. to give them, with the bonds, a certain amount of common stock in the new company, which, under the agreement between the two companies, was to be given to the Denver Company; and the said Denver Company thereby agreed

that upon the delivery to it of the $5,000,000 of the common stock of the new company it would forthwith deliver to Venner & Co. the amount of $3,595,-000 of said common stock as a part of the consideration to said Venner & Co. for their undertakings in the agreement contained. The new company appears to have been organized on the 31st of March, 1891, and the complaint alleges that on the 1st of April, 1891, there were delivered to the firm of Venner & Co. 647 of the mortgage bonds of the Denver City Water-Works Company, mentioned in the contract, and that the same were then and there purchased and accepted by said last-mentioned firm at the price of 90 and interest, and credit therefor given under the terms of the agreement. The complaint further alleges that Venner & Co. began to make and did make payments against said credit upon the account of said water-works companies, so that in August, 1891, there remained due from them the sum of about $200,000; that in said month of August the firm of Venner & Co., who entered into the agreement, was dissolved, and a new firm formed under the same firm name, who assumed and accepted all the benefits and obligations of said agreement, and since said time have continued, under the terms of said agreement, to perform the same as the same had been demanded until on or about the 23d day of September, 1891, when they, having to the credit of the plaintiff the sum of $184,000, notified the plaintiff that they would pay no further moneys on account of said indebtedness under said contract, and would not complete the performance of the same; and that they then refused the acceptance of a draft which was drawn against the account, and which was duly presented to the defendants for acceptance. The defendants denied their refusal to carry out the contract, but admitted that they refused to accept the draft in question, because it had been drawn by a person unauthorized to draw said draft and bind the plaintiff thereby, which fact is not controverted.

The complaint further alleges that at the time of the dissolution of the firm of Venner & Co. the plaintiff was indebted on an open account to said firm, not referred to in the agreement above mentioned, in a sum which the firm claimed to be about $73,000, but the exact amount of which the plaintiff was not able to state; that the new firm of Venner & Co. claimed that this account had been transferred to it, and that, after the formation of said new firm of Venner & Co., the said last-mentioned firm paid out some further amounts on the same account as said $73,000, so that the defendants claimed that the whole amount so to them on account of payments by them aside from their obligations under the agreement in question amounted to about the sum of $110,000; but the accuracy of this claim, the complaint states, is unknown to the plaintiff. It further appears that in August a meeting of the finance committee of the plaintiff was held, and a resolution was passed authorizing the making of notes to the defendants on such time or times as might be found suitable, for such amounts of money as might from time to time be outstanding and owing by the company; and that notes (which it is admitted were demand notes) were thereupon made for the sum of $100,000, and delivered to the defendants; and that at a meeting of the board of directors of the plaintiff on the 23d of September, 1891, the defendants demanded payment of said notes, and of a further sum, said to be $10,000, on open account, for which no note had yet been given. The complaint further alleges that the plaintiff company was on the 1st day of May, 1891, and ever since has been, and now is, the owner of the credit mentioned in and all the rights under said contract between said companies and Venner & Co. which belonged to either of said companies parties thereto. It is further alleged that at the meeting of the 23d of September, 1891, the plaintiff demanded of the defendants that they should fulfill their obligations under said contract, and make the payments thereby required, and in response the defendants answered that they would not perform said agreement, and would make no further payment of the notes and open account. What this last paragraph of the allegations

means we are unable to comprehend. Then follows an allegation that, the meeting of the 23d of September, 1891, having been adjourned to the 3d of October, 1891, the defendant Venner stated that when the directors assembled on that day they would assemble at a funeral. The complaint further alleges that the plaintiff is a solvent corporation, and from the statements made at the meeting of the said board of directors by the defendants as to their inability to make the payments under their said agreement the plaintiff was led to the conclusion that the defendants were insolvent; and, further, that the plaintiff believes that it is the intention of the defendants to either transfer the aforesaid notes of the plaintiff for the purpose of having an action brought upon them against the plaintiff, or bring action upon them themselves, or to transfer them by assignment to creditors; and by reason of the laws of the states of Colorado and Nebraska, upon an action being brought in such states, or either of them, for the collection of the aforesaid notes, writs of attachment would issue against the property of the plaintiff, the result whereof would be that it would be prevented from performing its contracts and obligations to the cities and people to which it is bound in those states, and would practically suspend the operation of its business, and destroy its property.

For a second cause of action, the plaintiff, adopting many of the allegations above mentioned, further alleges that the defendant Venner and one Sullivan were the two vice-presidents of the plaintiff corporation; and that by resolution of the board of directors, passed on the 1st of May, 1891, the said Venner & Co. were appointed transfer agents of the company, and as such transfer agents had possession of the stock-books of the company; and that under and by virtue of the tenth paragraph of the contract before referred to—being the paragraph wherein said Denver Water-Works Company agreed to deliver to Venner & Co. $3,599,000 (*sic*) of the common stock received from the plaintiff—said Venner & Co. caused to be issued to themselves the amount of $3,499,000 of said common stock for the purposes in said tenth paragraph mentioned; and, further, that said amount was so fixed in order that Venner & Co. might have $2,500,000 of said stock for the purposes in said paragraph mentioned, and deliver $999,000 of the same to the order of divers parties in Denver on account of services which had been rendered to the company; and that Venner & Co. did deliver said $999,000 to said parties in accordance with the understanding and agreement concerning the same, and retained $2,500,000 of said stock. It further alleged that the sole consideration for the delivery of said stock to said Venner & Co. was the performance by them of their agreement, namely, the furnishing of money to the amount of $1,250,000; and that the plaintiff, by reason of the breach on the part of the defendants of their several agreements, is entitled to have said $2,500,000 transferred to it or its order, for use for the purposes of the company; and that, should said stock be transferred by said defendants to strangers, the plaintiff would be deprived of a large and valuable consideration to give to others to induce the furnishing of the moneys and procure the finishing of the work of construction contemplated by the contracts; and that the defendants had lately given out and threatened that, notwithstanding the failure and refusal on their part to keep their contract, the plaintiff should never have any benefit of said stock, and the plaintiff believed that unless restrained therefrom, and said stock placed in the hands of a receiver, the defendants, to avoid the result of actions by the plaintiff, would transfer the stock, put the same afloat in the markets of the world, and put the same beyond the reach of the plaintiff. The complaint then prays judgment—*First*, for an accounting; *second*, for an injunction restraining the transfer of the $100,000 notes, or from in any way prosecuting or continuing to prosecute any action in any courts whatsoever or wheresoever for the recovery of the amount alleged to be due to the defendants by reason of said notes or on the

said open account of $10,000; *third*, that defendants be adjudged to return and transfer to plaintiff the said $2,500,000 of common stock, and that the defendants be enjoined and restrained pending the action from in any manner transferring, assigning, or disposing of said $2,500,000 of stock, or any part thereof; and that a receiver be appointed, etc.   This complaint was verified by a vice-president, and an affidavit made by the secretary, who swore that the allegations contained in the complaint were true of his own knowledge.

The defendants denied having made any statements as to their inability to carry out their contract, and alleged that all they had stated was that they could not make payments under said agreements, and also go on making advances for other purposes, and so carry the entire burden of the enterprise, without assistance from other people interested in it; and that the fact was that they had not only advanced money under the credit called for in the contract, but also advanced large sums of money which they were under no obligation to advance, and were the only ones connected with the company who advanced money for any purpose.   They denied that they were insolvent, and alleged that, although they subsequently suspended, it was caused by the institution of this suit, the result of which was to injure their credit, and induce creditors to call loans which could not be met immediately, although their assets were amply sufficient to pay such debts.   The defendants further allege, in respect to the $3,499,000 of stock which was issued, that in fact the whole amount of $5,000,000 of said stock was issued to the Denver Company, which transferred $2,500,000 thereof to them, and that no more had ever been transferred to them.   They denied that the sole consideration for the delivery of said stock was the performance by Venner & Co. of their agreements in the said contract.   They also allege that there was no authority whatever for the commencement of this action; and that at the meeting of the 23d September the subject of adjusting the account between the company and the defendants was referred to the finance committee, with instructions to report at the time to which said meeting might be adjourned; and that since said 23d of September there had been no meeting of the board of directors.   Upon the 29th of September, 1891, upon the complaint above mentioned, verified as above stated, this action was commenced, and a preliminary injunction granted, with an order to show cause, returnable on the 2d of October.   Upon the hearing of this motion, the foregoing facts appearing, the injunction was continued *pendente lite*, and from the order thereupon entered this appeal was taken.

We do not see upon what theory this action can be maintained.   In the first place, it seems to have been instituted absolutely without authority. The complaint is verified by the vice-president, who does not appear to have been clothed with any power to bring an action of the nature of the one at bar.   The defendant Venner seems to have occupied precisely the same position as the person who verified the complaint, and to have been clothed with equal authority.   We do not understand that an officer of a corporation has the power, simply because he is an officer, to bring any suits which his fancy may dictate, even if, in his opinion, it may be necessary to protect the interests of the association.   The defendant Venner has precisely the same authority to direct the discontinuance of the suit as Vice-President Sullivan has to direct its institution.   But there are other points which seem to be equally fatal to the maintenance of the action.   It is difficult to see what interest the plaintiff has in the $2,500,000 of stock issued to Venner & Co.   Although by the allegations of the complaint it seems to be alleged that this stock was issued by the plaintiff to the defendants Venner & Co., yet the allegation of Venner & Co. that this stock was issued to them by the Denver Company is undoubtedly the fact, because such an issue harmonizes with the provisions of the contract which the defendants had entered into with the water-works companies; and no other issue of stock could be a compliance with the pro-

visions of that contract, as this issue of stock is in the complaint alleged to have been. The agreement between the water-works companies for the formation of the new company shows that the Denver Company was to be entitled to $5,000,000 of the common stock of said new company; and then the contract between the companies and Venner provides that the Denver Company, as soon as it receives the $5,000,000 of the stock from the plaintiff, shall deliver a certain amount to Venner & Co. Where the title of the plaintiff to this $2,500,000 of stock is acquired is not shown. There is not a single allegation in the complaint tending to show the slightest particle of title in the plaintiff to this stock. If it be said that the allegation in the complaint that on or about the 1st of May, 1891, the plaintiff became the owner and entered into the possession of certain real and personal property, rights, franchises, choses in action, and assets situated in the states of Nebraska and Colorado, namely, the water-works, franchises, property, estate, and assets which had belonged to a corporation under the similar and same name, organized under the laws of Illinois, and which was known as the "Omaha Water-Works," and the property which had belonged to the Denver City Water-Works Company, a corporation organized under the laws of the state of Colorado, comprised an allegation of title to this stock, it will be seen by a further reference to this allegation that the real and personal property, rights, franchises, choses in action, and assets consisted of the water-works by which the cities of Omaha, South Omaha, and Florence, Neb., and the water-works situated in and by which the city of Denver and towns of Barnham, Highlands, Ellyria, and Montclair, in the county of Arapahoe and state of Colorado, are supplied with water, and that these are the properties and assets which they became owners of, and none others. How the plaintiff could become the owner of the consideration which was paid to the Denver Company for the transfer of its property remains unexplained.

But reference may be had possibly to another allegation of the complaint, which is to the effect that the plaintiff company was on the 1st of May, 1891, and ever since has been, and now is, the owner of the credit mentioned in and all the rights under said contract Exhibit B (being the contract between the companies and the defendants) which belonged to either of said water-works companies, and had succeeded to the same. But it appears that this was a succession to the rights under the contract between the water-works companies and Venner, and nothing more; whereas the Denver Company's right to the stock arose under the contract between the two companies, to which contract Venner & Co. were not parties. It would appear, therefore, that the plaintiff was absolutely without the shadow of a title or claim, so far as these papers disclose, to a single share of the stock in question. But, if this were not so, there is another complete answer to the claim of the plaintiff, so far as this stock is concerned. By this agreement Venner & Co. agreed to purchase certain bonds at a given price, and make certain advances; and, as an inducement to the purchase, these shares of stock were to be delivered to them as soon as received by the Denver Company. The allegation in the complaint is that the bonds were purchased and the stock delivered, and that Venner & Co. paid out of said purchase money upon account of the plaintiff a large amount of money, although a balance still remained due at the time this action was commenced. Upon what theory can the plaintiff rescind this contract in part, and retain the benefits in part? It claims the right to recover the balance of the purchase price of the bonds from Venner & Co., and yet denied the right of Venner & Co. to hold the stock which was delivered to them to induce them to purchase the bonds. Venner & Co. have precisely the same title to this stock as any other purchaser for value. They have the same title to this stock that they have to the bonds. They agreed to pay 90 per cent. for the bonds. The stock was to accompany the bonds, and, if there had been a failure of consideration, (even if the plaintiffs were the owners

and sellers of the stock,) they could not recover it back without returning that which they had received. Simply because a party has not paid the full purchase price which he has agreed to pay for articles does not justify the purchaser in taking some of them out of his possession, unless some such provision is made in the agreement.

But it is said that the consideration for this stock was the performance of the agreement between the water-works companies and Venner & Co., and that they have failed to perform their agreement. The construction of the agreement does not bear out this contention. The tenth paragraph of the contract is that the Denver Company has found it is unable to raise the money with which to complete the proposed works, etc., and that Venner & Co. were not willing to take the bonds unless accompanied by the stock, and it was necessary to agree with Venner to give them, with the bonds, a certain amount of stock in the new company, which, under the agreement between the two companies, was to be given to the Denver Company; and it was for this reason—to induce Venner & Co. to enter into the contract, to undertake its obligations, and to agree to take the bonds—that this stock was delivered. Now, there is no question but that Venner & Co. have taken a large amount of these bonds, and paid 90 and interest for them, and it is claimed by the plaintiff that he is indebted to it for a large amount of said bonds in addition to the amount of money which he has already paid. Can it be possible that they can be compelled to pay for these bonds, and not have that which was to accompany them? The claim that defendants were insolvent is certainly not substantiated. The fact that they suspended subsequent to the commencement of the action does not establish that result. It does not follow that they would have suspended had it not been for the difficulties arising out of the commencement of the action. The claim that they have refused to continue their advances is entirely unsubstantiated, the foundation of the allegation being the refusal to accept a draft which defendants allege, and which is not denied, was irregularly drawn; and there is not the slightest pretense that the defendants had failed up to that time in performing any of the obligations of this contract, and certainly the failure to accept an irregular draft could not be considered such a violation. It appears from the allegations in the complaint that the defendants had been advancing money to the plaintiff outside of and beyond anything which they were required to do by their contract, and beyond that which they were to make for the purposes of Denver construction. Thus it would seem that all the equities of the bill have been met, because this injunction cannot be sustained by anything that may have occurred afterwards. It is claimed in the points of the counsel for the respondent that Venner & Co., subsequent to the commencement of the action, made an assignment. But there is no evidence to that effect; and, even if the fact were so, it could not support an injunction which had no foundation whatever at the time it was made. There therefore seems to be no basis whatever for the injunction restraining the defendants in respect to the stock.

We next come to that part of the injunction which forbids the defendants from in any manner bringing any actions upon or assigning the notes of the plaintiff, or the open account due from the plaintiff. This claim for injunction is apparently founded upon the allegation that the plaintiff believed that it is the intention of the defendants to either transfer the aforesaid notes of the plaintiff for the purpose of having an action brought upon them against the plaintiff, or bring action upon them by themselves, or transfer the same by assignment to creditors; and by reason of the laws of the states of Colorado and Nebraska, upon an action being brought in such states, or either of them, for the collection of the aforesaid notes, writs of attachment would issue against the properties of the plaintiff, the result of which would be that it would be prevented from performing its contracts and obligations to the cities and people to which it is bound in those states, and would practically

suspend the operation of its business and destroy its property. In other words, the plaintiff, a foreign corporation, being indebted to the defendants in a certain sum of money, and claiming an indebtedness from the defendants to it in another sum of money, comes into the jurisdiction where the defendants reside, (we say where the defendants reside, because they are presumed to reside in this state, they doing business here, and no other place of residence being given,) and does the very thing which it alleges the defendants intended to do, viz., issue an execution before judgment. We say, issue an injunction before judgment, because the injunction which they have issued serves the same purpose. Now, apart from any other consideration, can a foreign corporation be permitted to use the courts of this state for any such purpose? Can the plaintiff be allowed to issue execution before judgment against the property of the defendants, (these notes being their property,) founded upon another claim against the defendants, because the defendants may, in the state where the plaintiff has property, pursue their rights by the issuing of an attachment before judgment? We think not. Besides, it is well settled that where a party has a defense at law to an obligation a court of equity will not interfere to prevent an action at law being brought upon such obligation. In *Grand Chute* v. *Winegar*, 15 Wall. 373, it was held that a municipal corporation—the obligor in a bond—cannot ask in equity that the obligee be enjoined from proceeding at law, and that the bond be surrendered, where the bill alleges that the bond was issued without authority, in violation of law, and in fraud of the plaintiff, and that the obligee knew this when he took it, and his possession is merely colorable, and that he gave no value for it, and never had any right or title to it. It was held that such allegations show a complete defense at law, and a judgment against the obligee at law would give as full protection to the obligor as a decree in equity. Mr. Justice HUNT uses language as follows: "And the result of the argument is that, wherever a court of law is competent to take cognizance of a right, and has power to proceed to a judgment which affords a plain, adequate, and complete remedy without the aid of a court of equity, the plaintiff must proceed at law, because the defendant has a constitutional right to a trial by jury. The right to a trial by jury is a great constitutional right, and it is only in exceptional cases that a party can be deprived of it. In *Allerton* v. *Belden*, 49 N. Y. 373, it was held that the right to apply to a court of equity to avoid a contract exists only where, from the form of the security, the defense cannot be made available at law, or where the instrument sought to be avoided is a cloud upon the title to land, or some other necessity for the interposition of a court of equity is shown. The opinion of RAPALLO, J., reads as follows: "The allegation in his complaint discloses a perfect defense at law to any action which might be brought against him on his indorsement; and no fact is stated showing any necessity for the interposition of a court of equity, or entitling the plaintiff to become an actor in the matter. The most usual ground for going into equity in such cases formerly was the necessity for a discovery to prove the usury. Bills of discovery being now abolished, some other of the grounds which formerly would have justified the filing of a bill for relief must appear in the complaint, or it shows no right of action. No authority has been cited sustaining an equitable action on such ground, but, on the contrary, it has been uniformly held that, where a perfect remedy, both as to discovery and relief, can be had at law, the action in equity cannot be maintained, and that the objection is available on demurrer." So, in the case of *Town of Venice* v. *Woodruff*, 62 N. Y. 462, the same principle is laid down. And in *Fowler* v. *Palmer*, 62 N. Y. 533, which was an action to compel the surrender of a note, based on the ground that it had been paid, but not taken up, the court held that the action could not be maintained in equity, and that the defense of payment was available in an action upon the note, and no transfer could prejudice it. In *Insurance Co.* v. *Reals*, 79 N. Y. 202,

it was held that an action to procure the cancellation of a written instrument cannot be maintained unless some special circumstance exists establishing the necessity of a resort to equity to prevent an injury which may be irreparable, and which equity alone is competent to avert. It is not sufficient that a defense exists against the instrument, or that evidence may be lost. To the same effect is the case of *Troy & B., etc., Ry. Co.* v. *Boston, H. T. & W. Ry. Co.*, 86 N. Y. 107. Many other cases might be cited to show that courts of equity will not take cognizance of a cause of action simply to perpetuate a defense. In the case at bar, if the plaintiff has any defense to the notes held by the defendants, it is available to it. The notes are payable on demand, have been demanded, and are due; and any defense which the plaintiff has against the notes may be available. But in the complaint it does not allege any defense. It virtually acknowledges that $100,000 is due upon the notes, and $10,000 on the open account. It sets up no defense whatever, but simply that it does not know what amount is due. As far as its claim of indebtedness from the defendants to them is concerned, if the defendants proceed upon the notes in question, the plaintiff has a right to offset or counter-claim the indebtedness. And it is no reason for the issuing of an execution before judgment that these reciprocal demands exist. It is impossible for the plaintiff, by this method of procedure, to prevent the defendants from having that trial of their claim against the plaintiff before a jury which the constitution guaranties to them. Upon the whole case, therefore, the order should be reversed, with $10 costs and disbursements, and the injunction dissolved, with $10 costs. All concur.