# PECHSTEIN *v.* SMITH.

EQUITY JURISDICTION; BONDS; MULTIPLICITY OF SUITS.

1. A bill in equity by the surety on certain bonds to secure postal contracts, against the Postmaster General, for the cancelation of such bonds and to enjoin him from declaring the contractor to be a failing bidder, is demurrable upon the ground that the complainant has an adequate remedy at law, where the allegations of the bill are that the bonds were never completely executed, according to law, are null and void, and, so far as complainant is concerned, are false, forged and fictitious, and that the complainant may be subjected to a multiplicity of suits on the bonds.

2. The mere possibility that a multiplicity of suits may occur, if there be colorable ground for them, created by the acts and conduct of the complainant himself, is not ground for equitable relief.

No. 849. Submitted November 10, 1898. Decided January 3, 1899.

HEARING on an appeal by the complainant from a decree

of the Supreme Court of the District of Columbia sustaining a demurrer to, and dismissing a bill in equity for the cancellation of certain bonds and for an injunction. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. C. H. Armes* and *Mr. James H. Ellsworth* for the appellant.

*Mr. Henry E. Davis,* United States Attorney for the District of Columbia, and *Mr. D. W. Baker,* Assistant Attorney, for the appellee.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

The bill in this case was filed by the appellant, Otto A. Pechstein, against the appellee, Charles Emory Smith, as Postmaster General of the United States, and a certain Joseph P. Stewart (who has not been served with process), for the purpose of having brought into court to be canceled certain bonds given to the United States to secure the execution of certain contracts by the said Stewart, as bidder for carrying the United States mail over certain mail routes; and for an injunction to restrain the Postmaster General from requiring the execution of the said contracts by Stewart, or from declaring him a defaulting bidder; and that the latter be restrained from entering into any contract with the United States for carrying the mail on any of the mail routes mentioned in the several proposals filed by him in the Department and described by number in the bill.

The bill alleges that the appellant and one W. H. Smith are sureties on certain bonds in which the said Joseph P. Stewart is principal, and that the bonds mentioned and complained of were signed and delivered in blank to the principal, Stewart, and were afterwards filled up by the principal and filed in the Department with his proposals

for the mail routes, without being first shown either to the said Smith, the co-surety, or to the complainant, and receiving his approval, according to an agreement and understanding to that effect. That the proposals of Stewart were accepted by the Department, and that he has been called upon and required by the Postmaster General to perform and fulfill his part of the contract, but that he has failed, and consequently he is about to be declared a failing or defaulting bidder, whereupon the bonds would become liable, under Sec. 3945 of the Revised Statutes of the United States, as amended by Act of Congress of June 29, 1874.

The bill alleges many irregularities and non-compliances with the requirements of the statute and of the general regulations of the Postoffice Department; but the only apprehended danger alleged that could even afford colorable ground for relief by a court of equity, is that the plaintiff may be exposed to a multiplicity of suits or actions at law upon the bonds so filled up and filed in the Department by Stewart. The general charge is made in the bill that the bonds were never completely executed, according to the requirement of the statute and the general postal regulations, and that, therefore, they are simply null and void. Indeed, it is charged that, so far as the complainant is concerned, the bonds are false, forged, and fictitious. But notwithstanding these general broad allegations as to the illegality of the bonds, the bill would seem to be entirely destitute of those essential allegations to show the existence of equitable grounds of relief, as distinguished from a valid legal defense.

The bill was demurred to by the defendant, the Postmaster General, and the court sustained the demurrer and dismissed the bill. And this action of the court seems to have been founded upon the broad ground that a party has no right to come into a court of equity for relief, if he has a good defense at law, and can not show some clear equitable ground for his application. *Hardinge* v. *Webster*, 1 Dr. &

Sm. 101; *Traill* v. *Barring*, 33 L. J. Ch. 521. The mere assertion of an equity is not sufficient to sustain a bill; but the case as stated in the bill must show sufficient equity by the allegation of facts to satisfy the court that there is an equitable element involved that will not be available, or can not be availed of, as a defense in an action at law.

This is the well-established principle in the English chancery, and the principle is equally well established in the courts of this country. To show this to be the case, it is only necessary to refer to a few of the well-recognized decisions upon the subject.

In the case of the *Town of Venice* v. *Woodruff*, 62 N. Y. 462, certain town bonds, irregularly issued, had been held by the State courts to be void, even in the hands of *bona fide* holders, but the United States courts had held otherwise, as to the *bona fide* holder for value without notice, and the town instituted proceedings to have the bonds delivered up and canceled, and to obtain an injunction to restrain the holders of the bonds from transferring them to *bona fide* holders who might sue in the United States courts. But it was held by the Court of Appeals of New York, that the court would not decree the bonds to be brought in and canceled, because *no special ground for equitable relief was shown.* The case was very elaborately argued, and the opinion of the court was delivered by Judge Rapallo. In the course of that well-reasoned opinion, the learned judge said:

"There must exist some circumstance establishing the necessity of a resort to equity, to prevent an injury which might be irreparable, and which equity alone is competent to avert. If the mere fact that a defense exists to a written instrument were sufficient to authorize an application to a court of equity to decree its surrender and cancelation, it is obvious that every controversy in which the claim of either party was evidenced by a writing could be drawn to the equity side of the court, and tried in the mode provided for the trial of equitable actions, instead of being disposed of

in the ordinary manner by a jury. Whether, therefore, the question be regarded as one of jurisdiction or of practice, it is established by the later decisions, that some special ground for equitable relief must be shown, and that the mere fact that the instrument ought not to be enforced is insufficient, standing alone, to justify a resort to a court of equity."

The same principle was restated and followed in the subsequent case, in the same court, of the *Globe Insurance Co.* v. *Reals,* 79 N. Y. 202. In that case it was declared that a court of equity " will not interfere to decree the cancelation of a written instrument unless some *special circumstance* exists establishing the necessity of a resort to equity to prevent an injury which might be irreparable, and which equity alone is competent to avert. That a defense exists is insufficient, nor is it enough that the evidence may be lost."

But there is a case of more conclusive authority than those just referred to, so far as this court is concerned, found in 15 Wall. 373; that of the *Town of Grand Chute* v. *Winegar.* There it was held by the Supreme Court of the United States, that a municipal corporation, obligors in a bond, could not ask relief in equity that the obligee be enjoined from proceeding at law, and that the bond be surrendered to be canceled, upon the mere allegation that the bond was issued without authority, in violation of law, and in fraud of the town; that the obligee knew this when he took it; that the obligee's possession was merely colorable, and that he gave no value for it, and never had any right or title to the bond; that such allegations showed a good defense to the bond at law; and that as against the obligee at law would afford as full protection in every way to the obligor as a decree by a court of equity. In that case the bill prayed that an injunction might be issued restraining the defendant and his confederates from the further prosecution of suit on the bonds, and that the bonds themselves might be adjudged to be fraudulent and void,

and be decreed to be canceled. To that bill the defendant demurred, and the demurrer was sustained; and that decree was affirmed by the Supreme Court.

In the opinion of the Supreme Court in that case, reference is made to and extensive quotations taken from the opinion of Mr. Justice Campbell, speaking for the court, in the case of *Hipp* v. *Babin*, 19 How. 271; and in which case there referred to, the court, after stating the general constitutional principle that distinguishes the jurisdictions of law and equity, proceeded to declare: "Agreeably hereto, the established and uniform practice of courts of equity is to dismiss the plaintiff's bill if it appears to be grounded on a title merely legal, and not cognizable by them, notwithstanding the defendant has answered the bill and insisted on matter of title." And after citing numerous authorities, the matter is thus summed up by the court in the case of *Hipp* v. *Babin*: "And the result of the argument is, that wherever a court of law is competent to take cognizance of a right, and has power to proceed to a judgment, which affords a plain, adequate, and complete remedy, without the aid of a court of equity, the plaintiff must proceed at law, because the defendant has a constitutional right to a trial by jury." This right to trial by jury, say the court, in the case of *Grand Chute* v. *Winegar*, "is a great constitutional right, and it is only in exceptional cases and for specified causes that a party may be deprived of it. It is in vindication of this great principle, and as declaratory of the common law, that the Judiciary Act of 1789, Sec. 16, declares 'that suits in equity shall not be sustained in either of the courts of the United States in any case where adequate and complete remedy may be had at law.'"

As before stated, a demurrer was interposed by the defendant in the case of *Grand Chute* v. *Winegar*, and it was said by the court, that all the allegations of the bill were to be taken as true, both for and against the plaintiff. And the court then proceeded to say: "It seems quite clear upon

the statements of the bill, that the defense to the suit at law upon the bonds is adequate and complete. Thus the bonds, it is alleged, were issued without authority and in fraudulent violation of the duty of those having the subject in charge. It is not suggested that there is any difficulty, either legal or practical, in establishing these facts by competent proof. If proven, they furnish as complete a defense to the suit at law to recover the amount of these bonds as they do in equity." And the court held that there was no authority for bringing the suit in equity.

If it be true, as alleged in the bill, that the bonds in question were filed in the Department regardless of essential requirements of the statute and of the postal regulations, and "that said bonds, so far as they purport to express acts of the plaintiff, are false, forged, and fictitious," and as to the plaintiff, therefore, null and void, a good and sufficient defense exists to any action at law that may be brought on those bonds against the plaintiff in this bill, and there can be no difficulty in the proof of the facts. It is alleged, however, as ground for equitable relief, that the plaintiff may be subject to a multiplicity of suits on the bonds. But a multiplicity of actions on the bonds is not necessary, nor is it likely to occur, for, as said by the Supreme Court in *Grand Chute* v. *Winegar*, a single suit or judgment for or against the present plaintiff as surety would determine the question as to the validity or invalidity of the bonds, so as effectually to prevent all future vexatious litigation, so far as he is concerned. But apart from this fact, the mere possibility that a multiplicity of suits may occur, if there be colorable ground for them, and that colorable ground of action has been created by the acts and conduct of the present plaintiff himself, such fact or possibility of action on the bonds, can furnish no reason for coming into a court of equity on an application such as the present. There must be a special equity connected with the existence of the bonds themselves, without the fault or active connivance of the

14 Ct. App.—4

present plaintiff, to call into active exercise the jurisdiction of a court of equity, for the relief of the complainant. This ground for relief was strongly urged upon the court in the case of *Town of Venice* v. *Woodruff*, heretofore referred to, but the court did not hesitate to overrule the attempt to maintain the bill on that ground.

We do not decide the question as to whether the bonds are valid or invalid; but only the question that there is no such equity shown by the allegations of the bill, as distinguished from the grounds of a legal defense to an action at law, as to warrant the exercise of jurisdiction by a court of equity in restraining by injunction all action or contemplated action on the bonds, and to call in such bonds for cancelation.

It follows that the decree appealed from dismissing the bill must be affirmed; and it is so ordered.

*Decree affirmed.*